COURT OF APPEALS OF VIRGINIA

Present: Judges Kelsey, Haley and Petty
Argued at Salem, Virginia


SCOTT R. BRANDAU

                                                                    OPINION BY
v.          Record No. 2723-07-3              JUDGE D. ARTHUR KELSEY
                                                                 SEPTEMBER 16, 2008
CAROL J. BRANDAU


                    FROM THE CIRCUIT COURT OF PULASKI COUNTY
                              Robert M.D. Turk, Judge

            Frank W. Rogers, III (Mundy, Rogers & Associates, LLP, on
            brief), for appellant.

            John S. Huntington for appellee.


        Scott R. Brandau appeals a final divorce decree arguing that the trial court erroneously

calculated a spousal support award to his former wife. The calculation was flawed, husband

contends, because it failed to impute income to wife and rested on an inflated estimate of his

income. Finding neither assertion persuasive, we affirm.

                                              I.

        When reviewing a trial court's decision on appeal, "we view the evidence in the light

most favorable to the prevailing party, granting it the benefit of any reasonable inferences."

Smith v. Smith, 43 Va. App. 279, 282, 597 S.E.2d 250, 252 (2004) (quoting Congdon v.

Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003) (citations omitted)). "That

principle requires us to discard the evidence of the appellant which conflicts, either directly or

inferentially, with the evidence presented by the appellee at trial." Petry v. Petry, 41 Va. App.

782, 786, 589 S.E.2d 458, 460 (2003) (citation omitted).

After 22 years of marriage, husband left his wife. Their son, the younger of two children, was in his senior year of high school. An older child was in college.

Husband is a self-employed optometrist with substantial earnings. Wife has not worked outside the home during the marriage, with the sole exception of a brief, part-time effort at assisting husband at his office. Wife has only a high school degree. She is not computer literate and has no specific vocational training. Wife suffers from dilated cardiomyopathy as well as other associated heart conditions (left ventricular dysfunction, chronic diastolic dysfunction, and ventricular tachycardia). Over the years, wife has had four pacemaker-defibrillators implanted in her chest designed to intervene during potentially lethal disruptions of her heart rate. She often becomes highly fatigued and has unexpectedly passed out from her heart condition. Added to these problems, wife suffers from hypothyroidism.

At trial, wife testified that she and husband agreed that she would be a stay-at-home mother to their two children. It was a "family decision," she said, for her "to fulfill the role of homemaker and mother." "I was going to be at home with our children," she testified, pursuant to their joint decision. She thought it particularly important to be home with her younger son prior to sending him off to college. "That is my full-time job," she explained.

Husband relied at trial on a vocational expert who opined that wife's present physical and vocational capacities suggest she could get a light or sedentary job earning about $14,500 a year with an average hourly wage between $6.00 to $8.00. An expert for wife agreed that, in principle, she was employable "but at risk" and could be reasonably expected to find only low-wage, low-stress positions (around the $13,000-a-year range) given her medical condition, lack of vocational training or higher education, inability to use computer technologies, and long absence from the job market.

On the question whether to impute income to wife for spousal support purposes, the trial court ruled it would not do so "at this time." In addition to noting wife's health issues, the court took into account "the understanding that Dr. Brandau would work and be the breadwinner while Mrs. Brandau would stay at home and take care of the family needs."

Another issue debated at trial was the proper computation of husband's income from his subchapter S corporation. An accountant for wife examined the corporation's financial records and concluded that husband made about $190,000 a year. Husband's accounting expert testified the better figure was $140,000 a year.

One of the differences between the two figures involved an adjustment for an item called "Wages Paid to Children." Husband gave monetary gifts to his children. Instead of giving the money outright, however, he listed his two children as "employees" of the corporation and their gifts as "salary." By doing so, these salaries served as ostensible business expenses on the corporation's financial statements and income tax returns. At trial, husband's accounting expert conceded that such practices "appear to be inappropriate" and should be ignored for purposes of calculating husband's true income. After considering all the evidence, the trial court accepted the $190,000 income calculation offered by wife's accounting expert and based husband's spousal support obligation upon that finding.

Pursuant to Code § 20-91(A)(6), the trial court awarded wife a final divorce decree based on evidence that husband "willfully deserted" the marriage. The court found the "circumstances and factors which contributed to the dissolution of the marriage," Code § 20-107.1(E), warranted a support award to wife. The court calculated that award by reviewing the evidence in light of the statutory factors listed in Code § 20-107.1(E). The final decree included the caveat that, at some later date, the "support award may be modified upon either party's showing of a material change in circumstances."

II.

A. IMPUTATION OF INCOME

Husband argues that the trial court erred as a matter of law in failing to impute income to wife given the "uncontested" evidence of her earning capacity of at least $13,000. Underlying husband's argument is the presupposition that, absent exceptional circumstances, every stay-at-home spouse seeking spousal support must start work outside the home immediately upon the entry of the divorce decree if he or she has any provable income earning capacity. We find no basis for such an inflexible principle in our statutes or caselaw.

In Virginia, when "a claim for support is made by a party who has been held blameless for the marital breach, the law imposes upon the other party a duty, within the limits of his or her financial ability, to maintain the blameless party according to the station in life to which that party was accustomed during the marriage." Gamble v. Gamble, 14 Va. App. 558, 573-74, 421 S.E.2d 635, 644 (1992); see also Lapidus v. Lapidus, 226 Va. 575, 581, 311 S.E.2d 786, 789 (1984); Butler v. Butler, 217 Va. 195, 197, 227 S.E.2d 688, 690 (1976); Stubblebine v. Stubblebine, 22 Va. App. 703, 710, 473 S.E.2d 72, 75 (1996) (*en banc*); Furr v. Furr, 13 Va. App. 479, 483-84, 413 S.E.2d 72, 75 (1992). This principle recognizes that, assuming Code § 20-107.1(B) does not otherwise bar spousal support,[1] "determining whether to award support and maintenance for a spouse" still requires judicial consideration of the "circumstances and factors which contributed to the dissolution of the marriage . . . ." Code § 20-107.1(E).

In determining "the nature, amount and duration of an award," the court must consider twelve specific statutory factors as well as any other concern "necessary to consider the equities

---

[1] Subsection B of Code § 20-107.1 eliminates the trial court's discretionary authority to award spousal support in cases of adultery under Code § 20-91(A)(1) absent a showing of manifest injustice "based upon the respective degrees of fault during the marriage and the relative economic circumstances of the parties." Congdon, 40 Va. App. at 263, 578 S.E.2d at 837 (quoting Code § 20-107.1(B)).

- 4 -

between the parties." Id. Whether to impute income to a spouse seeking support is simply one component of calculating the "amount" of support under the statutory factors listed in Code § 20-107.1(E). Three of the statutory factors deal directly with this concept:

> 9. The earning capacity, including the skills, education and training of the parties and the present employment opportunities for persons possessing such earning capacity;
>
> 10. The opportunity for, ability of, and the time and costs involved for a party to acquire the appropriate education, training and employment to obtain the skills needed to enhance his or her earning ability; [and]
>
> 11. The decisions regarding employment, career, economics, education and parenting arrangements made by the parties during the marriage and their effect on present and future earning potential, including the length of time one or both of the parties have been absent from the job market[.]

Code § 20-107.1(E). While directly relevant to the question of imputation, these specific factors do not render the more general factors inconsequential. Whether to impute income also depends, in part, on a conscientious consideration of all factors, including the "standard of living established during the marriage," the "duration of the marriage," and the positive and negative "contributions, monetary and nonmonetary, of each party to the well-being of the family." Code § 20-107.1(E)(2), (E)(3) & (E)(6).

Husband argues that, notwithstanding the discretionary factors, our caselaw has tightly synthesized these principles into a statutory preset requiring imputation of income to a spouse seeking support if he or she has provable earning capacity at the time of the divorce. He cites Srinivasan v. Srinivasan, 10 Va. App. 728, 734, 396 S.E.2d 675, 679 (1990), for the proposition that a spouse has a presumptive duty to go to work following a divorce if he or she had provable earning capacity. This assertion comes from *dictum* in Srinivasan that "one who seeks spousal support is obligated to earn as much as he or she reasonably can to reduce the amount of the support need." Id. (citing Baytop v. Baytop, 199 Va. 388, 395, 100 S.E.2d 14, 19 (1957)

- 5 -

(imputing income where wife for "many years" had "earned a salary that is ample to maintain her in the station in life to which she has been accustomed")).[2]

Our holding in Srinivasan, however, directly refutes husband's view. In Srinivasan, the trial court imputed income to a wife based upon her Ph.D. and her prior working experience as a college professor. We *reversed* the trial court because it failed to take into account that the unemployed wife, "*at the time of divorce*, was leading the life style she was accustomed to during the marriage" and was thereafter "entitled to a reasonable time to secure employment." Id. at 735, 396 S.E.2d at 679 (emphasis added). "Thus, the trial court should not have decided, under the present circumstances, as a matter of law, that the wife was not entitled to support." Id. at 735, 396 S.E.2d at 679-80.

Neither Srinivasan nor any other Virginia case has held that, for purposes of calculating spousal support, a stay-at-home spouse capable of working must go to work immediately after the divorce trial or face a judicially imposed imputation of income. To the contrary, Virginia cases imputing income (including Baytop, cited by Srinivasan) all involved spouses who worked during the marriage but, sometime after separation, either accepted a job beneath their earning capacity or stopped working altogether. See, e.g., Baytop, 199 Va. at 393, 100 S.E.2d at 18 (imputing income to spouse who worked during marriage and quit her employment "[s]ometime prior to the trial"); Butler, 217 Va. at 197, 227 S.E.2d at 690 (imputing income to spouse whose earning capacity permitted him to "double his income" by taking a different job); O'Hara v.

---

[2] In his appellate brief, husband also discusses in considerable detail our unpublished panel decision in McKee v. McKee, No. 0739-07-1, 2008 Va. App. LEXIS 51 (Jan. 29, 2008). Unpublished opinions, of course, have no precedential value and thus do not implicate the interpanel accord doctrine. See generally Congdon, 40 Va. App. at 265, 578 S.E.2d at 838 (describing interpanel accord doctrine applicable to published opinions). That conclusion is all the more secure here given that, sitting *en banc*, we vacated the McKee panel opinion and rejected its reasoning on the issue of spousal support. McKee v. McKee, 52 Va. App. 482, 664 S.E.2d 505 (2008) (*en banc*).

O'Hara, 45 Va. App. 788, 798, 613 S.E.2d 859, 864 (2005) (affirming imputation of income based upon "wife's income over the past several years" that ended after she was "terminated" by her employer).

In this case, the trial court heard evidence on many of the Code § 20-107.1(E) factors as it applied to this marriage of nearly twenty-five years. Except for a brief period when she helped husband at his office, wife had been a stay-at-home mother of two children based upon an understanding she and husband had during the marriage. At the time of the divorce trial, her youngest boy was finishing up his senior year of high school and she wanted to stay home until the boy left for college. In addition, while not incapable of working outside the home, wife suffers with a congenital heart condition counseling caution and the need to avoid "at risk" employments. Added to these concerns is the fact that her formal education went no further than a high school degree.

Based upon this evidence, the trial court held: "It would not be equitable for the court now to . . . impute income to her *at this time*." In doing so, the court carefully limited its ruling to the conditions existing at the time of the final divorce decree, leaving open the possibility of recalibrating the support award at some later date as conditions change. See generally McKee, 52 Va. App. at 489-93, 664 S.E.2d at 509-11; Stubblebine, 22 Va. App. at 723, 473 S.E.2d at 81 (recognizing that spousal support awards must be made "upon the circumstances disclosed by the evidence at the time of the award" (citation omitted)); Theismann v. Theismann, 22 Va. App. 557, 573, 471 S.E.2d 809, 817 (affirming a finding that "although Mrs. Theismann would be able to reenter the work force at a later time, her absence from the workforce and the 'emotional drain' resulting from the breakup of her marriage made it inappropriate to impute income at this time"), aff'd, 23 Va. App. 697, 479 S.E.2d 534 (1996) (*en banc*).

Spousal support determinations typically involve fact-specific decisions best left in the "sound discretion" of the trial court. McKee, 52 Va. App. at 489, 664 S.E.2d at 509 (quoting Blackburn v. Michael, 30 Va. App. 95, 102, 515 S.E.2d 780, 784 (1999)). A trial court's decision "on this subject will not be reversed 'unless there has been a clear abuse of discretion.'" Congdon, 40 Va. App. at 262, 578 S.E.2d at 836 (citation omitted). "When dealing with discretionary decisions, only 'when reasonable jurists could not differ can we say an abuse of discretion has occurred.'" Robbins v. Robbins, 48 Va. App. 466, 482, 632 S.E.2d 615, 623 (2006) (citation omitted). No such showing has been made here. "In this case, credible reasons supported the trial judge's decision that imputation of income was not appropriate, and no abuse of discretion occurred." Sargent v. Sargent, 20 Va. App. 694, 704, 460 S.E.2d 596, 601 (1995) (affirming trial court's decision not to impute income to a wife working below her potential as teacher's aide, the job she held most recently during the marriage). We thus affirm the trial court's decision to award spousal support without imputing income to wife.

### B. CALCULATION OF HUSBAND'S INCOME

Husband also claims the trial court abused its discretion in accepting the wife's expert testimony of husband's income from his professional corporation. That income calculation, husband argues, includes an "improper adjustment applied by the wife's expert" to the corporate "wages" to the two children. Appellant's Br. at 24. As husband's expert conceded, however, the adjustment was proper because husband's claimed business expense was improper. From the start, husband intended the alleged wages to be a gift. No evidence suggested the children were *bona fide* employees or that they earned the "wages" husband deducted as a business expense. Suffice it to say, the trial court had no obligation to base its spousal support calculation in any way upon husband's unconventional accounting practices.

## C. AWARD OF APPELLATE FEES

Both husband and wife seek an award of attorney fees incurred on appeal. "The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear. The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment." O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).

We summarily reject husband's request, given that he did not prevail on either of his two assertions on appeal and necessarily cannot be a candidate for an award of appellate fees. See Rogers v. Rogers, 51 Va. App. 261, 274, 656 S.E.2d 436, 442 (2008) (denying attorney fees to non-prevailing party, citing Smith v. Smith, 43 Va. App. 279, 291 n.6, 597 S.E.2d 250, 256 n.6 (2004)).

We grant in part wife's request for appellate fees. We view husband's second argument (challenging the trial court's calculation of his income) as wholly meritless, an assertion not fairly debatable under any reasonable construction of the record or the governing legal principles. We have no reluctance imposing fees in such circumstances. See, e.g., Klein v. Klein, 49 Va. App. 478, 483, 642 S.E.2d 313, 316 (2007); Miller v. Cox, 44 Va. App. 674, 688-89, 607 S.E.2d 126, 133 (2005). We view husband's first argument (advocating an imputation of income to wife) as erroneous but nonetheless fairly debatable. We deny wife's request for fees as to this issue.

We remand this case to the trial court to award wife all attorney fees associated with her defense of husband's second argument. We accept that mathematical certitude is an illusory goal when attempting to segregate legal fees between discrete arguments. See generally Hensley v. Eckerhart, 461 U.S. 424, 436-37 (1983) (recognizing that while "no precise rule or formula"

- 9 -

exists for such determinations a fee request "should not result in a second major litigation"). On remand, we direct the trial court to determine a reasonable division of labor between the issues argued on appeal and to make a partial fee award based upon this determination.

III.

In sum, we find no error in the trial court's spousal support award to wife. Neither the decision to decline an imputation of income to wife nor the calculation of husband's income can be fairly characterized as an abuse of discretion. We affirm the trial court and remand this case for a partial award of appellate attorney fees.

<u>Affirmed and remanded.</u>