COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Kelsey and Haley
Argued at Richmond, Virginia

TOM A. BROADHEAD, JR.

v.      Record No. 0923-09-2

ANNE E. BROADHEAD                                    MEMORANDUM OPINION[*] BY
                                                     JUDGE D. ARTHUR KELSEY
ANNE E. BROADHEAD                                         MARCH 16, 2010

v.      Record No. 1097-09-2

TOM A. BROADHEAD, JR.

                   FROM THE CIRCUIT COURT OF HENRICO COUNTY
                              L. A. Harris, Jr., Judge

                   Kathleen B. Havener (The Havener Law Firm, LLC, on
                   briefs), for Tom A. Broadhead, Jr.

                   Mary Burkey Owens (Kimberly A. Skiba; Owen &
                   Owens PLC, on briefs), for Anne E. Broadhead.

        This child support case returns to us following our remand in Broadhead v. Broadhead,

51 Va. App. 170, 655 S.E.2d 748 (2008) (Broadhead I).  Both parties filed separate appeals,

which we now consolidate for purposes of decision, asserting the trial court erred during the

remand proceedings.  We affirm on all issues, except one, and remand the case for the trial court

to readdress that issue.

                                            I.

        When reviewing a trial court's decision on appeal, "we view the evidence in the light

most favorable to the prevailing party, granting it the benefit of any reasonable inferences."

Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003).  "That principle

requires us to discard the evidence of the appellant which conflicts, either directly or

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

inferentially, with the evidence presented by the appellee at trial." Brandau v. Brandau, 52 Va. App. 632, 635, 666 S.E.2d 532, 534 (2008) (citation omitted).

This case came to us in Broadhead I on an appeal by Tom A. Broadhead, Jr. (father) contending the trial court erroneously imputed income to him upon a finding that he was voluntarily underemployed. We reversed because the trial court "failed to consider the other factors relevant to an analysis of whether father is voluntarily underemployed in his [then] current position." Broadhead I, 51 Va. App. at 183, 655 S.E.2d at 754.

After our ruling, father accepted a new job in Oregon making much less than the trial court had imputed to him but close to the amount he earlier claimed would be appropriate. Mother thereafter withdrew her request to impute income, which was the sole basis for our reversal in Broadhead I. Convinced by the parties that the initial debate between them had been overtaken by events, the trial court did not impute income to the father and ordered father to pay $650 a month in child support as of May 16, 2008 — considerably less than the $1,800 a month ordered by the 2001 divorce decree and the $890 monthly payment agreed to by the parties in 2003. Because father had ceased paying child support after our remand pursuant to yet another agreement with mother not approved by the court, the trial court calculated father owed an arrearage of $7,150.[1]

On appeal, father argues the trial court's award was too high for various reasons. In her cross-appeal, mother argues the award was too low for various reasons. As we address the appeal and cross-appeal issues, we will restate only those facts pertinent to the issue raised.

---

[1] At various times in the trial court, father and mother agreed father could not recover overpaid child support in restitution. Despite the trial court's suggestion that it "needed to go back" and look at the earlier facts, father "conceded that after his research" the vacated order "was the order up until the time that it was changed, absent fraud being shown." Hearing Tr. at 12 (Mar. 30, 2009). Given father's position, the trial court concluded the question of support prior to the remand proceedings had become moot. The entire arrearage accrued after our remand and was calculated by the trial court at the new support level.

## II.  FATHER'S APPEAL

Many of father's arguments rest on a misunderstanding of the effect of <u>Broadhead I</u>.  He assumes our remand "left a gaping hole" in his court-ordered obligation to provide child support.  <u>See</u> Father's Appellant Br. at 12.  Not so.  <u>Broadhead I</u> vacated the 2006 modification order and remanded the case for reconsideration of the then-pending petitions for modification.  The order that was modified, however, was the 2001 divorce decree which imposed a $1,800 a month child support obligation.  Without a modification order, the 2001 decree remained in force.  The baseline on remand, therefore, was not the vacated 2006 order but rather the 2001 decree.

### A.  *Failure to Follow <u>Broadhead I</u> Mandate*

On appeal, father claims the trial court disobeyed our mandate in <u>Broadhead I</u> by failing to reexamine the facts as of the time of the earlier 2006 hearing to determine if he was underemployed at that time.  Had the circumstances not materially changed between the trial court's 2006 pre-appeal hearing and the 2009 remand hearing, we would agree with father.  The circumstances, however, greatly changed during that time.

The matter came before the trial court in 2006 on father's request for a reduction in child support based on his reduced income and the parties' 2003 agreement to limit support to $890 a month.  The 2001 divorce decree had set child support at $1,800 a month.  The burden of proof was on father to present changed circumstances warranting a reduction.  He alleged his income had fallen from about $283,000 to about $170,000 a year because he had to change jobs.  The trial court held father responsible for the job change and imputed to him the higher of the two incomes.  Finding the imputation erroneous, we remanded the case to the trial court to determine whether "father is voluntarily underemployed in his current position" taking into account the reasonableness of his job search efforts and the availability of higher paying positions near father's residence.  <u>Broadhead I</u>, 51 Va. App. at 184, 655 S.E.2d at 755.

After our remand, father took a new job in Oregon making $180,000 (about $10,000 more than his most recent position but far less than the income figure earlier imputed to him). Both parties thereafter filed new motions to amend the support order. At the remand hearing, mother did not seek to impute income to father. Instead, mother accepted his new salary as a baseline wage figure subject to potential adjustments for travel expenses and bonus income.[2] These new circumstances, coupled with mother's decision not to challenge the new wage figure, mooted any need for the trial court to determine whether father was underemployed in the $170,000 job that he no longer had.[3] That issue had been overtaken by events. Cf. Wagner v. Wagner, 16 Va. App. 529, 532, 431 S.E.2d 77, 79 (1993) (*en banc*) (holding the "trial court did not err in using the most current valuation" of assets on remand).

### B. *Credit for Father's "Voluntary" Support Payments*

After our decision in Broadhead I, father continued to pay $800 in monthly child support for four months. In May 2008, he stopped paying altogether pursuant to yet another unapproved agreement with mother. Eleven months passed with father paying no support. The court's April 2009 order found father had "not paid any child support since April of 2008, and that there is an arrearage due in the amount of $7,150.00 from May 16, 2008 through and including the payment that was due on March 16, 2009." Order at 3 (Apr. 16, 2009). The order calculated the arrearage using a figure of $650 a month.

Father requested, and the trial court refused, to make the new support award effective as of the date of our Broadhead I mandate. On appeal, father argues he made those payments

---

[2] At a hearing on remand, mother's counsel acknowledged father is presumptively "working at capacity or he wouldn't have agreed to take a job in Portland, Oregon." Hearing Tr. at 5 (Oct. 6, 2008).

[3] Father also argues the circuit court improperly "relieved mother of the burden to prove 'changed circumstances' to justify an *increase* in child support." Father's Appellant Br. at 12

"voluntarily (i.e., not pursuant to a valid child support order)." Father's Appellant Br. at 15. "Once the Court of Appeals overturned the child support order of the Trial Court in January 2008, there was *no order in effect* that required father to continue paying child support." Id. (emphasis added).[4] We disagree.

Broadhead I reversed the trial court's modification of the child support award in the 2001 divorce decree. But our reversal of the modification decree did not have the effect of vacating any provision of the 2001 divorce decree. As a result, father had a continuing court-ordered obligation to pay child support. Abiding by the parties' 2003 agreement, mother did not seek to recover the full $1,800 a month obligation imposed by the 2001 divorce decree. Her waiver, however, did not provide father with any equitable grounds to seek a credit for "voluntary" child support payments between the date of our Broadhead I mandate and the trial court's decision on remand.[5]

Perhaps so, father counters, but he was involuntarily unemployed during the four months he paid $800 and the court should have taken that into consideration in calculating his arrearage. Decreasing his support obligation for those months, he reasons, could offset some of the accrued

_____

(emphasis added). The judicial baseline for the modification petitions, however, was the 2001 divorce decree requiring father to pay $1,800 in child support.

[4] We question whether this argument is consistent with the position taken by father in the trial court. As the trial court explained during the first hearing after the remand, "it was agreed" by father and mother that "what had been paid – the old order I think was $800 a month – that that was the order unless fraud could be shown." Hearing Tr. at 11 (Mar. 30, 2009). While the trial court initially suggested it "needed to go back" in time, father "conceded that after his research" the earlier order "was the order up until the time that it was changed, absent fraud being shown. That's how we got into all this fraud issue." Id. at 12. At most, therefore, father challenged only the four payments made after our remand.

[5] The trial court's letter opinion set the effective date at May 19, 2008. Letter Op. at 2 (Feb. 10, 2009). After hearing competing motions to reconsider the court ordered the effective date reset at May 16, 2008, and ordered mother's counsel to draft an order reflecting its ruling. Hearing Tr. 23-24 (Mar. 30, 2009). There appears to be a scrivener's error in the order because it recites the date as March 16, 2008. Order at 3 (Apr. 16, 2009). Neither of the parties,

arrearage during the later eleven-month period that he paid no support at all. We find this argument unpersuasive for two reasons.

First, the trial court began its arrearage calculation in May 2008 — because mother asked for no more — rather than calculate the entire period during which father was paying far less than had been ordered by the 2001 divorce decree. By so doing, father was relieved of a substantial arrearage.[6] Second, whether to retroactively modify a support order to the date of an earlier petition "is entirely within the discretion of the trial court." Stiles v. Stiles, 48 Va. App. 449, 456, 632 S.E.2d 607, 611 (2006) (citation omitted). In its opinion letter, the circuit court noted father "made no attempt to alter the support amount until his first filing after the appeal, which was on May 19, 2008." Opinion Letter at 2 (Feb. 10, 2009). The post-remand support order fully enveloped the period during which the court calculated father's arrearage. Thus, none of the arrearage was calculated with allegedly erroneous support figures, and father has not shown why earlier putative overpayments should not be considered gifts to the children. See Buxbaum v. Buxbaum, 20 Va. App. 181, 186, 455 S.E.2d 742, 755 (1995) ("[S]upport payments made by an obligated spouse over and above court-ordered monthly support are considered gifts or gratuities." (citation omitted)).

### C. *The Specificity of the Trial Court's Findings*

Relying on Code § 20-108.1(B), father argues on appeal the trial court failed to provide sufficiently specific written findings in support of its child support award. We disagree.

_____

however, objected to the order on this basis. Nor did they assign error on this point in their respective cross appeals. We thus do not address the issue further.

[6] During a 2006 hearing, the court noted it could hold "the agreement that was never made an order has no effect and the original order carried forward all these years." Father's counsel responded: "We have talked about that. We wouldn't be happy about that." Hearing Tr. at 63 (Aug. 28, 2006).

If a court deviates from the presumptive guideline support award, Code § 20-108.1(B) requires the court to make "written findings" that the application of the "guidelines would be unjust or inappropriate" in the case. The trial court's findings must be in "enough detail and exactness to allow for effective appellate review of the findings." Princiotto v. Gorrell, 42 Va. App. 253, 260, 590 S.E.2d 626, 630 (2004) (quoting Richardson v. Richardson, 12 Va. App. 18, 22, 401 S.E.2d 894, 897 (1991)).

The findings made by the trial court in this case provide sufficient detail for us to exercise appellate review over the decision to deviate from the guidelines. In its letter opinion, rulings from the bench, and written orders, the trial court stated it deviated from the guidelines primarily because of father's travel costs and mother's underemployment.[7] Father contends the trial court did not state the mathematical impact of those factors on the "computation of child support" or identify the "secondary calculation" which produced the deviation amount. See Father's Appellant Br. at 4, 18. We have never required a trial court to provide such computations, however, and we decline to do so now.[8]

---

[7] Father argues imputation of income should be included in the presumptive calculation found under Code § 20-108.2. If that were true, the General Assembly would have made imputation a mathematical factor, see Code § 20-108.2, rather than a rebuttal factor, see Code § 20-108.1. So long as the court finds the presumptive amount "unjust or inappropriate," it may make either an upward or downward deviation from the presumptive amount. The statute does not require the hard numbers found in its formula be replaced by the equitable factors used for rebutting it.

[8] Father also questions the trial court's failure to specifically address why it did not take into account his living expenses in Oregon and the comparative liquidity of the parties' substantial assets. We view this complaint not so much as a challenge to the specificity of the court's deviation from the guidelines, but rather, as a challenge to the court's decision not to deviate from the guidelines based upon either of these two concerns. Framed as such, the decision rests wholly within the discretion of the trial court. "If the applicability of the factors is supported by the evidence and the trial judge has not otherwise abused his or her discretion, the deviation from the presumptive support obligation will be upheld on appeal." West v. West, 53 Va. App. 125, 135, 669 S.E.2d 390, 395 (2008) (citation omitted).

D.  *Assigning Mathematical Values to Deviation Factors*

Father argues the trial court, upon making the decision to deviate from the guidelines, "erred in not recalculating" the award using the income imputed to mother, the father's living expenses in Oregon,[9] and the different liquidity characteristics of the parties' assets.  The court erred, he claims, when it refused to calculate the "guidelines using imputed income" rather than "actual income" and treating imputed income as a variance factor.  Father asserted at trial, and here on appeal, that the court had earlier done so to arrive at the $800 a month award.  In response, the court stated:  "I know the guidelines were not refigured as guidelines using the imputed income because I don't think – I think that's error to do that."

As we understand father's argument, he contends a trial court must put precise dollar figures on each of the deviation variables and then *recalculate* the ultimate support award from the baseline figures provided by the guidelines.  As we just noted, however, we know of no authority for this proposition.  The support figure produced by the guidelines, despite its computational complexity, still produces only a *presumptively* valid award.  The General Assembly intended Code § 20-108.1(B) to enhance, not displace, the exercise of discretion by the trial court.  Deviating from the presumptive award was meant to involve a reasoned, discerning judgment.  It was not meant to be a series of precise adjustments with each deviation factor carrying a mathematical weight.  The ultimate decision — how to best protect the child's best interests — calls for the discerning judgment of a chancellor, not the computational exactitude of an accountant.

---

[9] The trial court's letter opinion stated:  "The evidence further shows that Mr. Broadhead incurs significant costs for visitation since he is employed out of state.  (Mr. Broadhead's increased housing costs, etc. is considered as a factor to consider in deviation from the guideline support as opposed to a deduction in income because he chooses to maintain two homes and is not required to do so.)."  Letter Op. at 2 & n.1 (Feb. 10, 2009).

Implicit in father's argument is the assumption that a trial court, when tasked by the statute to "consider" a factor, must put a dollar figure on it and thereafter debit or credit either the payor or payee parent. We disagree with this view. As a general rule, "'[w]hat weight, if any, to assign to this [or that] factor in the overall decision lies within the trial court's sound discretion.'" Robbins v. Robbins, 48 Va. App. 466, 481, 632 S.E.2d 615, 622 (2006) (quoting Owens v. Owens, 41 Va. App. 844, 859, 589 S.E.2d 488, 496 (2003)) (second alteration in original). As we have often said: "[T]he trial court *must* consider each of the statutory factors, but *may* determine what weight to assign to each of them." Id. (quoting Owens, 41 Va. App. at 859, 589 S.E.2d at 496 (citation omitted and emphasis in original)). A trial court need not assign a dollar value to the deviation factors of Code § 20-108.1(B) in order to fairly consider them for purposes of establishing a child support award.

### E. *Attorney Fee Award in Trial Court*

The trial court awarded attorney fees to mother and denied father's request for an award of fees. Father argues on appeal the trial court abused its discretion in doing so. We disagree.

Whether to award attorney fees "is a matter submitted to the sound discretion of the trial court and is reviewable on appeal only for an abuse of discretion." Smith v. Smith, 43 Va. App. 279, 290, 597 S.E.2d 250, 256 (2004) (quoting Kane v. Szymczak, 41 Va. App. 365, 375, 585 S.E.2d 349, 354 (2003)). Given the unique equities of each case, our "principles of appellate review steer clear of inflexible rules and focus instead on 'reasonableness under all the circumstances.'" Kane, 41 Va. App. at 375, 571 S.E.2d at 354 (quoting Joynes v. Payne, 36 Va. App. 401, 429, 551 S.E.2d 10, 24 (2001)).

In this case, father accused mother of fraud during the discovery process. Mother responded with a motion for sanctions under Code § 8.01-271.1. The trial court found father's accusation meritless but, giving him the benefit of the doubt, concluded father had not violated

Code § 8.01-271.1. The court nonetheless awarded $5,000 in attorney fees to mother because, while not sanctionable, the fraud allegation was "weak at best" and required mother to incur unnecessary fees to defend against the accusation. The court added that "this fact" (the cost of defending herself against a meritless charge of fraud), coupled with the "greater earnings and earning capacity" of father, warranted a discretionary award of fees.

Father argues on appeal the trial court failed to appreciate that mother's untimely responses to discovery prolonged the dispute and made her culpable for extra legal fees (including his) incurred to bring the matter to closure. The record, however, reveals the trial court considered this argument and found it unpersuasive. On appeal, the issue before us is not whether we would "find that the equities favor one or the other party," Kane, 41 Va. App. at 376, 585 S.E.2d at 355, but whether the trial judge abused his discretion in finding the equities favored the imposition of the fee on father.

We cannot find an abuse of discretion on these facts. While it may be true mother could have brought the issue to a close earlier in the discovery process, the trial court had a reasonable basis for concluding the fraud charge should never have been made in the first place. By setting in motion the fraud allegation and then seeking discovery that might confirm or refute it, father tipped the equities against him in the eyes of the trial court. "When dealing with discretionary decisions, only 'when reasonable jurists could not differ can we say an abuse of discretion has occurred.'" Brandau, 52 Va. App. at 641, 666 S.E.2d at 537 (quoting Robbins, 48 Va. App. at 482, 632 S.E.2d at 623). No such showing has been made here.

### III. MOTHER'S APPEAL

#### A. *Father's Anticipated $40,000 Bonus*

At the remand hearing in January 2009, father testified he expected to receive a $40,000 bonus from his Oregon employer on July 31, 2009. He stated the bonus was "guaranteed" so

long as he remained employed with the company through June 2009. Father added that, while he had no present intention to leave his job before July 2009, he was looking for a job closer to his children and would quit his Oregon job if offered a suitable position closer to his Virginia home. The trial court concluded it would be premature to include the $40,000 bonus in father's income. Implied in the trial court's reasoning is that the bonus, if it actually vests, would itself constitute a change in circumstances that could be considered by the court at a later time.

We find no fault with the trial court's reasoning. Bonus income must be included in Code § 20-108.2(C)'s definition of "gross income" for child support purposes. But a trial court should only include a conditional bonus within the employee's gross income when, at the time of the evidentiary hearing, the conditions are reasonably likely to be met for the bonus to vest. It is true here, as it is generally, that "support awards must be based on contemporary circumstances and modified in the future as changes in circumstances occur." Rogers v. Rogers, 51 Va. App. 261, 270, 656 S.E.2d 436, 440 (2008) (citation omitted). The relevant circumstances are those "'within the immediate or reasonably foreseeable future,' not to what may happen in the future." Barrs v. Barrs, 45 Va. App. 500, 509, 612 S.E.2d 227, 231 (2005) (citation omitted). "What is 'reasonably foreseeable' depends on the circumstances of the particular case." Id. (citation omitted).

The circumstances of this case support the trial court's lack of confidence in the predicted bonus. Father has worked for at least four different employers since 2003. His volatile employment record, coupled with his desire to quit his Oregon job if he could find a suitable one nearer his Virginia home, put the likelihood of the bonus in enough doubt (at least at the time of the January 2009 remand hearing) for the trial court to decline to take the bonus into account. Deferring to the trial court's evaluation of the evidence on this issue, we find no error in its decision to exclude the anticipated $40,000 bonus from father's income.

## B. *Income Imputed to Mother*

Mother argues on appeal the trial court should not have imputed income to her because father failed to carry his burden of proof on this issue. We disagree.

In Broadhead I, we noted the "trial court also imputed income to mother, finding that she was voluntarily underemployed. However, mother conceded this point at trial and does not appeal the trial court's decision to impute income to her. Thus, that issue is not before us on appeal." Broadhead I, 51 Va. App. at 185 n.1, 655 S.E.2d at 749 n.1. At the remand hearing, the trial court correctly applied the law-of-the-case doctrine to preclude relitigation of this issue. Under this doctrine, a party is not "entitled to relitigate unappealed issues on remand." Lockheed Info. Mgmt. Sys. Co. v. Maximus, Inc., 259 Va. 92, 108, 524 S.E.2d 420, 429 (2000); see generally Robbins, 48 Va. App. at 473-74, 632 S.E.2d at 619 (citation omitted).

Mother argues this analysis fails to take into account the new circumstances that arose in her employment situation between the first appeal and the remand hearing. We accept the underlying premise of this objection but fail to see how it applies to this case. If mother's employment situation changed from the earlier unappealed factual findings of the trial court, it was her burden to establish changed circumstances, "unlike cases asking for imputed income at the time of the initial award." Broadhead I, 51 Va. App. at 180, 655 S.E.2d at 752 (citation omitted). The law-of-the-case doctrine set the imputation baseline for mother's imputed income. Without some showing by mother that it should be set aside by *new* circumstances, the trial court's prior decision to impute income to mother (which mother chose not to appeal in Broadhead I) remained bindings on the parties.[10]

---

[10] Right up until the court issued its letter opinion in the remand proceedings, mother's counsel repeatedly acknowledged the binding effect of the trial court's earlier finding imputing income to her. See, e.g., Hearing Tr. at 24 (Oct. 6, 2008); Hearing Tr. at 118 (Jan. 26, 2009).

## C. *Effective Date of Modification*

The trial court calculated the modified child support award ($650 a month) to be effective retroactively to May 16, 2008 — the date both parties were notified of the scheduling of the remand hearing. The "earliest date" the trial court could have chosen, mother argues, was September 19, 2008, the date mother filed her post-remand motion to amend. Mother's Appellant Br. at 20. Her argument on appeal rests on the assumption that "there was no pending petition for modification in any court" until she filed her petition on September 19, 2008. Id.

Because we do not agree with mother's first premise, we find the remainder of her argument unpersuasive. There was a petition for modification pending in May 2008. When we remanded the case for a rehearing in Broadhead I, we did not *end* the underlying proceeding. We expressly directed the trial court to conduct an evidentiary hearing on remand. It was wholly unnecessary for either party to file a new petition for modification to invoke the trial court's jurisdiction to decide the case on remand. The trial court's jurisdiction stemmed from the original 2006 petition, its concomitant notice, and our mandate directing the court to reconsider its imputation decision. The trial court, therefore, had ample discretion to make its decision retroactive to May 16, 2008.[11]

## D. *Unreimbursed Medical/Dental Expenses*

Mother contends the trial court erred by ordering the parties to divide equally (instead of proportionately under Code § 20-108.2(D)) any reasonable and necessary unreimbursed medical or dental expenses for their children. Neither party, she continues, presented evidence of an agreement to equally divide these expenses and the trial court made no finding that good cause

---

[11] Mother's counsel asserts this holding could result in injustice when a payor spouse files notice and then delays resolution of the petition. We believe the circuit court's statutory discretion to retroactively set the effective date of the change uniquely suited to handle such situations. See Stiles, 48 Va. App. at 456-47, 632 S.E.2d at 610-11.

required an equal division.  Father initially contested this argument.  <u>See</u> Father's Appellee Br. at 16-17.  At oral argument on appeal, however, father's counsel stipulated error on this point and conceded the trial court should have ordered a proportionate division of these expenses.  <u>See</u> Oral Argument Recording at 49:18 (Dec. 1, 2009).  We accept father's concession of error and remand this issue to the trial court solely for purposes of amending its order to require proportionate division of unreimbursed medical and dental expenses pursuant to Code § 20-108.2(D).

E.  <i>Sanctions Under Code § 8.01-271.1</i>

Finally, mother argues the trial court erred as a matter of law by not sanctioning father under Code § 8.01-271.1 for making meritless fraud allegations against her.  We disagree.

A trial court must "employ an 'objective standard of reasonableness' in evaluating" an alleged violation of Code § 8.01-271.1.  <u>Williams & Connolly v. PETA</u>, 273 Va. 498, 510, 643 S.E.2d 136, 141 (2007) (citation omitted).  Under this standard, the trial court should "consider whether 'after reasonable inquiry, [counsel] could have formed a reasonable belief that the pleading[s] [were] well grounded in fact, warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and not interposed for an improper purpose.'"  <u>Id.</u> (modifications in original and citation omitted).

On appeal, we "must apply an abuse of discretion standard when reviewing a circuit court's determination to impose sanctions pursuant to Code § 8.01-271.1."  <u>McNally v. Rey</u>, 275 Va. 475, 481, 659 S.E.2d 279, 282 (2008).  "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred."  <u>Grattan v. Commonwealth</u>, 278 Va. 602, 620, 685 S.E.2d 634, 644 (2009) (quoting in parenthetical <u>Thomas v. Commonwealth</u>, 44 Va. App. 741, 753, 607 S.E.2d 738, 743 (2005)).

In this case, the trial court found father's fraud allegations were "weak at best" but not sanctionable. We cannot set aside this conclusion as an abuse of discretion. Father based his allegation on his belief that mother's parents had been enhancing her income with monetary gifts mother had not disclosed. He relied upon discovery information suggesting a large discrepancy between her reported income and her expenditures. While his allegations of fraud were rejected by the trial court, the trial court acted within its discretion in denying mother's motion to sanction father under Code § 8.01-271.1.

IV.

With one exception, we affirm the trial court's judgment on remand from Broadhead I. Based upon father's stipulation of error, we reverse only the trial court's decision to equally divide unreimbursed medical and dental expenses. The case is remanded to the trial court solely for the purpose of correcting this error.[12]

Affirmed in part, reversed in part, and remanded.

---

[12] Both father and mother seek appellate legal fees from each other. Finding their respective arguments "fairly debatable" under a reasonable construction of the record and the governing legal principles, Brandau, 52 Va. App. at 642, 666 S.E.2d at 538, we deny their requests for appellate fees.