UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Fulton and Ortiz

MELISSA ROWE DILLON

MEMORANDUM OPINION*
v.      Record No. 1139-21-3                         PER CURIAM
                                                     OCTOBER 4, 2022

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
Onzlee Ware, Judge

(Aaron B. Houchens, on brief), for appellant. Appellant submitting
on brief.

(Jason S. Miyares, Attorney General; Susan Brock Wosk, Assistant
Attorney General, on brief), for appellee. Appellee submitting on
brief.

Appellant, Melissa Rowe Dillon, appeals from the decision of the Circuit Court of the City

of Roanoke revoking her previously suspended sentences. Dillon contends that the trial court

abused its discretion in sentencing her to seven years of active incarceration because the sentence

was "excessive" and because the trial court failed to consider expert mitigation evidence. After

reviewing the briefs and record in this case, we affirm the decision of the trial court.

BACKGROUND

"On appeal of the revocation of a suspended sentence, the appellate court reviews the

evidence in the light most favorable to the Commonwealth, [as] the party who prevailed below."

*Jenkins v. Commonwealth*, 71 Va. App. 334, 339 n.2 (2019) (citing *Jacobs v. Commonwealth*, 61

Va. App. 529, 535 (2013)).

_____

* Pursuant to Code §17.1-413, this opinion is not designated for publication.

In November 2007, the trial court convicted Dillon of three counts of embezzlement, in violation of Code § 18.2-111. In January 2008, the trial court sentenced her to a total of fifteen years of imprisonment, with all but twelve months suspended. Her sentences included twelve years of supervised probation. The trial court also ordered Dillon to pay restitution in the amount of $552,135.77. After her release from incarceration, Dillon reported to probation and parole. The conditions of her probation included a promise to "obey all [f]ederal, [s]tate and local laws and ordinances."

In October 2020, Dillon's probation officer reported that the Circuit Court of Roanoke County had then convicted Dillon of nine more counts of embezzlement and one count of money laundering.[1] The offenses for those charges took place between May 2010 through November 2016 against two small companies for which Dillon worked following her release from serving her sentence for her original convictions for embezzlement. In connection with those additional charges, the circuit court sentenced Dillon to a total of fifty years of imprisonment—with forty years suspended—and an indefinite period of supervision. The circuit court also ordered her to pay restitution in the amount of $249,349.70. Based on the probation officer's major violation report, the trial court issued a rule to show cause.

At the time of the revocation hearing, "fourteen (14) years of revo[c]able time" and approximately $540,150 in restitution payments remained outstanding in connection with Dillon's original charges. The probation officer testified that Dillon had "spoke[n] about pursuing a divorce and . . . using the money that she got from the divorce to pay towards the restitution in both

---

[1] Dillon's probation officer also noted that Dillon had appeared before the trial court for prior revocation hearings to address restitution payments stemming from her original convictions. According to the probation officer, Dillon was found not to be in violation of her probation at those prior hearings, but was to "remain under supervision for an indefinite period of time" and "make payments of $100.00 per month until the restitution [wa]s paid in full, at which point the Court would release her from probation."

matters." In addition, she had agreed to convey "all of her rights in the equity of the marital estate or any other real estate including reconve[y]ing a title, if necessary." The Commonwealth rested after introducing the probation officer's testimony and major violation report.

Dillon testified on her own behalf and stipulated that she violated the terms of her probation. She testified that she had been married to her husband since April 1989, and "[f]rom the very beginning he had [her] convinced that if [she] left him, then nobody would have [her] and he would kill [her]." She added that she suffered verbal and physical abuse from her husband "on a daily basis" and that it "all pertained to money." She stated that she felt under her husband's control and engaged in her criminal activity "to keep . . . him from abusing me." Dillon's thirty-one-year-old daughter testified that she had "witnessed [Dillon's husband] dragging [Dillon] out of the house by her hair. He would break things often in front of us to scare us . . . . He tried to get [Dillon] to swallow her diamond ring. Lots of screaming, yelling; threatening to kill us." Dillon's daughter added that Dillon is "a good person. She made some bad decisions, but it was because my dad was constantly controlling everything she was doing."

In addition to oral testimony, Dillon also produced a psychological evaluation report completed by Dr. Alice L. Twining, a licensed clinical psychologist. According to the report, Dillon met the criteria for "[a]nxiety, [d]epression, (severe)" and "[p]ost-[t]raumatic [s]tress [d]isorder" due to her husband's "serious, chronic abuse, control and coercion." Dr. Twining recommended psychotherapy and family therapy to address Dillon's psychological issues. Lastly, Dr. Twining noted that "[t]he economic abuse that [Dillon] experienced explains how [her husband] was involved in the embezzlement" but that she also "accept[ed] responsibility for her actions and is very remorseful." Dillon also produced a police report from January 2012 documenting an incident of domestic assault which led to her hospitalization and to husband's arrest.

After considering the evidence, the trial court concluded that Dillon had violated the conditions of her probation. The trial court revoked a portion of her suspended sentences and imposed a sentence of seven years of active incarceration. This appeal followed.

ANALYSIS

Dillon argues that "[t]his case presents a situation in which an abused woman re-offended out of necessity" and that the trial court erred by focusing only "on the new conviction and impermissibly ignored Appellant's expert mitigation evidence." She also maintains that the trial court wrongly rejected the psychological evaluation report completed by Dr. Twining.

After suspending a sentence, a trial court "may revoke the suspension of sentence for any cause the court deems sufficient that occurred at any time within the probation period, or within the period of suspension fixed by the court." Code § 19.2-306(A). "In revocation appeals, the trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Jacobs*, 61 Va. App. at 535 (quoting *Davis v. Commonwealth*, 12 Va. App. 81, 86 (1991)). "An abuse of discretion occurs only when 'reasonable jurists' could not disagree as to the proper decision." *Thomas v. Commonwealth*, 62 Va. App. 104, 111 (2013) (quoting *Brandau v. Brandau*, 52 Va. App. 632, 641 (2008)). "This principle necessarily implies that, for some decisions, conscientious jurists could reach different conclusions based on exactly the same facts—yet still remain entirely reasonable." *Id.* (quoting *Hamad v. Hamad*, 61 Va. App. 593, 607 (2013)).

The trial court heard the mitigating and aggravating evidence. The trial court considered Dillon's history with her husband, as well as Dr. Twining's report. The trial court also considered the impact on the community and businesses from which Dillon stole the money. The trial court reasoned that there was zero chance that Dillon would ever be able to complete her restitution payments for the approximately $500,000 she originally embezzled. Therefore,

the trial court explained that it "owe[d] a duty to the citizens and to the company" to sentence Dillon punitively. The trial court also emphasized that she "made no effort" to find solutions or change the relationships in her life following the years of abuse she suffered. Ultimately, the trial court held that Dillon's mitigation evidence failed to overcome the fact that she continued the same criminal behavior while working for two other companies following her release from incarceration after serving the sentence for her original embezzlement convictions—as well as her documented failure to make meaningful efforts to pay restitution.

The record before the trial court reflected that Dillon had violated the conditions of her probation when she was convicted of new crimes. "The statutes dealing with probation and suspension are remedial and intended to give the trial court valuable tools to help rehabilitate an offender through the use of probation, suspension of all or part of a sentence, and/or restitution payments." *Howell v. Commonwealth*, 274 Va. 737, 740 (2007). By incurring new convictions, Dillon demonstrated that she was not amenable to rehabilitation. "When coupled with a suspended sentence, probation represents 'an act of grace on the part of the Commonwealth to one who has been convicted and sentenced to a term of confinement.'" *Hunter v. Commonwealth*, 56 Va. App. 582, 587 (2010) (quoting *Price v. Commonwealth*, 51 Va. App. 443, 448 (2008)). Dillon failed to make productive use of the grace that had been extended to her by failing to abide by the conditions of her suspended sentences. Having reviewed the record, we hold that the sentence that the trial court imposed represents a proper exercise of discretion.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*