COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges O'Brien, AtLee and Malveaux
Argued at Norfolk, Virginia


LARRY JAMES BAKER

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1476-22-1            JUDGE RICHARD Y. ATLEE, JR.
                                                    MARCH 12, 2024
VICKY SUE BAKER


FROM THE CIRCUIT COURT OF GLOUCESTER COUNTY
Jeffrey W. Shaw, Judge[1]

Breckenridge Ingles (Martin, Ingles & Hensley, Ltd., on briefs), for
appellant.

Charles E. Haden for appellee.


Larry James Baker ("husband") appeals the trial court's denial of his motion to reduce or

eliminate his spousal support obligation to Vicky Sue Baker ("wife").[2]  He argues that the trial court

erred by imputing his pre-retirement income to him and by not imputing income to wife.  For the

following reasons, we reverse and remand.

I.  BACKGROUND

"When reviewing a trial court's decision on appeal, we view the evidence in the light

most favorable to the prevailing party, granting it the benefit of any reasonable inferences."

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413.

[1] Judge Shaw rendered the final judgment.  Retired Judge Charles L. Ricketts, III,
rendered the judgment challenged on appeal.

[2] We recognize that "former husband" and "former wife" are more accurate designations.
Nevertheless, we use these less cumbersome titles in this memorandum opinion for ease of
reference.

*Nielsen v. Nielsen*, 73 Va. App. 370, 377 (2021) (quoting *Congdon v. Congdon*, 40 Va. App. 255, 258 (2003)).

The parties were married in 1970 and separated in 2016. On May 11, 2018, the parties entered an agreement, providing in relevant part that husband would pay wife $1,700 per month in spousal support each month beginning June 1, 2018. The agreement further provided that the amount and duration of spousal support could be modified based upon a material change in circumstances. On June 14, 2018, the trial court entered a final divorce decree that incorporated the parties' agreement.

On February 16, 2022, husband moved to reduce or terminate his spousal support obligation, arguing that his retirement on February 14, 2022, constituted a material change in circumstances and his only source of income was his social security benefits. At this time, both parties were 70 years old. At a hearing on the motion, husband testified that his disabled sister, Katherine, began living with him in 2016 after their mother passed away. Katherine had a spinal deficiency, cancer, and dementia and attended "adult daybreak" six to eight hours each day, five days a week.

Husband married Teresa Baker in 2019. Husband did not believe Katherine should live in a nursing home because of the expense, and he believed that he and Teresa cared for Katherine better than a nursing home would. Accordingly, in 2021, Teresa stopped working to care for Katherine. At that time, the "only way" for the family to afford losing Teresa's income was for husband to continue his employment.

For 20 years, husband had worked in energy management construction. His most recent employment as a "project manager" ended on February 11, 2022, after his voluntary retirement. As a project manager, husband was responsible for "daily recording" of projects and inspections; his

responsibilities required climbing, walking, and crawling. His most recent project involved inspecting transformers, some of which were up to 30 feet in the air.

Husband retired because he knew his "work was going to end" when his contract work was completed, and, in his opinion, he was unable to "walk around, squat, climb ladders," and essentially "do whatever else was necessary to do the job." Husband testified that it had been difficult to inspect the transformers on his most recent job because when he bent over, "the nerve that apparently gets in between the spinal cord pinches." Husband claimed he was in good physical condition for his age but that he had "some limits." He testified that he was driving 500 miles per week in heavy traffic and that it was extremely difficult to manage his projects, describing his employment as "riding a sinking ship."

After his retirement, husband's sole source of income was $3,722 per month in social security benefits. His monthly expenses, including his spousal support obligation, totaled $8,272. Husband admitted that he did not have "much of" a retirement plan at the time of his retirement. Upon retirement, husband's income went from over $156,000 per year to less than $45,000. He had tried to reduce expenses, including his monthly cellphone bill, gifts for his grandchildren, and entertainment. When he first retired, husband had $27,000 in a credit union account that he used entirely for household expenses and payment of spousal support. At the time of the hearing, $13 remained in the account.

Wife testified that she worked as a personal trainer and fitness instructor at Riverside Wellness and Fitness Center for approximately nine to ten hours per week; her hours were reduced in 2020 because of COVID-19 staffing restrictions. Wife began receiving social security benefits at 62 years old. Her total monthly income, including her spousal support from husband, totaled $3,089 per month, and her monthly expenses totaled $3,254. Wife stated that she was in generally good health but had previously suffered a heart attack and had spine surgery, a bladder lift, and a

hysterectomy. Wife testified that husband wanted her to be employed only part time during the marriage, and the parties considered that when fashioning the spousal support agreement. The last time wife worked full time was in the 1990s.

The trial court found that husband's voluntary retirement was a material change in circumstances. Accordingly, the trial court considered the factors in Code §§ 20-109 and 20-107.1 when considering whether the support award should be amended. The trial court found that husband's financial situation was unrealistic, as both he and his current wife stopped working to provide care for his sister, who attended an adult care program five days per week. It also found that husband offered "no other evidence" besides his own opinion that he could no longer perform his assigned job duties. Moreover, the trial court found that husband "did absolutely no planning for retirement and left his job with no way to provide for his living expenses, pay his creditors or satisfy his support obligation." Accordingly, after consideration of the statutory factors, the trial court found that reduction or termination of his spousal support obligation was not justified. Thus, the trial court denied husband's motion to modify support. In doing so, the trial court imputed to husband his entire pre-retirement income. Husband now appeals.

## II. ANALYSIS

Husband argues that the trial court erred by imputing his pre-retirement income to him. We agree, though we emphasize that our ruling is specific to the particular facts present in this case. *See Stubblebine v. Stubblebine*, 22 Va. App. 703, 709 (1996) (en banc) (emphasizing that "[e]ach case depends on its particular facts").[3]

---

[3] Because we conclude that the trial court erred by refusing to modify spousal support and imputing husband's entire pre-retirement income to him, we do not address husband's argument that the trial court erred by failing to impute income to wife. Because of our ruling on the imputation of husband's income and the fact-specific nature of these cases, we recognize that those facts will, at least to some degree, be revisited when reheard on remand.

*A. Modification of support and standard of review*

Setting and modifying spousal support involves "fact-specific decisions" that we review for an abuse of discretion. *Nielsen*, 73 Va. App. at 390 (quoting *Brandau v. Brandau*, 52 Va. App. 632, 641 (2008)).

"The moving party in a petition for modification of support is required to prove both a material change in circumstances and that this change warrants a modification of support." *Id.* at 379 (quoting *Dailey v. Dailey*, 59 Va. App. 734, 742-43 (2012)). A "payor spouse's attainment of full retirement age shall be considered a material change in circumstances" when considering the modification of a spousal support award. Code § 20-109(E). Full retirement age is defined as "the normal retirement age at which a person is eligible to receive full retirement benefits under the federal Social Security Act." *Id.*

Upon finding a material change in circumstances, "[t]he trial court then has broad discretion in deciding whether the spousal support award should be modified and, if so, by how much." *Nielsen*, 73 Va. App. at 379. The trial court must consider six factors to determine whether the modification or termination of the award should be granted. *See Driscoll v. Hunter*, 59 Va. App. 22, 33 (2011) ("A material change in circumstances, by itself, does not require the alteration of a spousal support award."). These factors are:

> 1. Whether retirement was contemplated by the court and specifically considered by the court when the spousal support was awarded;
> 2. Whether the retirement is mandatory or voluntary, and the terms and conditions related to such retirement;
> 3. Whether the retirement would result in a change in the income of either the payor or the payee spouse;
> 4. The age and health of the parties;
> 5. The duration and amount of spousal support already paid; and
> 6. The assets or property interest of each of the parties during the period from the date of the support order and up to the date of the hearing on modification or termination.

Code § 20-109(F). The trial court may also consider the factors for setting spousal support in Code § 20-107.1(E). *Id.*

Although declining to establish a formal rule, this Court has found it "persuasive[] that a spousal support award should not operate to force persons who have reached usual retirement age to continue working." *Stubblebine*, 22 Va. App. at 709. While "[a] reduction in income resulting from a voluntary employment decision does not require a corresponding reduction in the payor spouse's support obligations, even if the decision was reasonable and made in good faith," there is no "bright-line rule requiring a payor spouse to forgo retirement in order to maintain support obligations at a pre-retirement level. Each case depends on its particular facts." *Id.* at 708-09. "Spouses entitled to support 'have the right to be maintained in the manner to which they were accustomed during the marriage, but their needs must be balanced against the other spouse's financial ability to pay.'" *Id.* at 710 (quoting *Floyd v. Floyd*, 1 Va. App. 42, 45 (1985)).

B. *The trial court's decision placed undue weight on certain factors and relied on conclusions that lacked evidentiary support.*

While we are mindful of the deferential standard of review, we nevertheless find that the trial court abused its discretion by imputing husband's *entire* pre-retirement income. We find that the trial court placed too much emphasis on certain factors, in particular the fact that husband's retirement was voluntary, *see* Code § 20-109(F)(2), and the parties' lack of assets to support them post-retirement, *see* Code § 20-109(F)(6).

As to the first factor, the trial court's emphasis on the voluntary nature of the retirement rested on its belief that husband could have requested a change in responsibilities or continued working in his role. To the first part, it is pure speculation on the trial court's part, without evidentiary support, that husband could have negotiated with his employer to perform some alternate role that did not require him to perform the physical aspects of his job, or that such a position would earn a comparable salary. As to the latter part, the trial court essentially disregarded

- 6 -

the uncontroverted evidence that husband, being several years past legal retirement age, retired in the face of a mounting struggle to perform the physical demands of his construction job. One could expect these struggles to become more significant, and more prone to end in injury or accident, if husband had started work on a new contract. The trial court also ignored that there was no evidence that husband, already retired, could resume working in that role, or that he could obtain other employment at the same salary.

The trial court emphasized that "[t]he only justification Mr. Baker offered, for leaving his employment, was that his job was physically demanding, and he felt he could no longer perform his assigned duties." Yet, despite there being no contradictory evidence, the trial court disregarded this as merely "his opinion"; however, it did not find that husband was not credible. It emphasized that husband had not provided additional evidence to support his assertion that, at 70, he was starting to face mobility challenges, and in doing so essentially required husband to introduce medical records and expert testimony to justify his retirement. For an uncontested issue, the time and expense of providing such corroboration should not be a prerequisite to prove the common-sense notion that a 70 year old is experiencing physical limitations in his physically demanding construction job.

Despite noting that husband "has difficulty bending," the trial court nonetheless, by imputing to him his entire previous salary, required husband to maintain employment that required squatting, crouching, and climbing ladders. Even if husband, as the trial court found, was "in relatively good health" for someone at age 70, the evidence reflected that "[h]usband experienced significant changes in his position that were outside his control," *Nielsen*, 73 Va. App. at 384, due to the mobility challenges that generally accompany aging and their interference with job performance. "[H]usband's departure from his job . . . whether voluntary or not, is relevant only to the extent it bears upon husband's current level of earning capacity." *Id.* at 383.

- 7 -

The trial court even noted that husband "may not be able to replace all his income," before concluding that he "has the work experience to obtain employment and generate additional income," but that "[n]o evidence was presented on exactly what he might be able to earn." This highlights that the evidence did not support imputing his full pre-retirement salary, and wife presented no other evidence about what husband's earning capacity may be. *Cf. McKee v. McKee*, 52 Va. App. 482, 491 (2008) ("The party seeking the imputation is required to present evidence 'sufficient to enable the trial judge reasonably to project what amount [of income] could be anticipated'" in the context of setting a support amount. (alteration in original) (quoting *Joynes v. Payne*, 36 Va. App. 401, 421 (2001))). To impute to husband the entire salary of a job he was increasingly unable to perform ignores that the evidence reflected that his earning capacity had, and was continuing to, change. That is not to say that the trial court could not have imputed *some* income to husband. Only that the evidence in this case did not support imputing to him the *entire* income of a job that he could not continue to perform.

As to the second factor, the trial court's opinion also heavily weighted that the parties had inadequate retirement savings to support their spending.[4] By imputing income solely to husband, however, it placed the responsibility for having adequate retirement savings entirely on him, overlooking that this circumstance was created by both parties over the course of their approximately 46-year marriage. Planning and providing for retirement is not the responsibility of one spouse, and, absent some evidence that supports doing so, a court should not place that burden solely on one party. While husband had been the primary breadwinner both during and after the marriage, wife, a partner in the marriage, was also responsible for the decisions that the parties

---

[4] Husband argues that this conclusion is unsupported by the evidence, noting that the unforeseen, and costly, emergency of needing to care for his sister when their parents passed away and she developed dementia is largely responsible for his budget deficit and lack of savings. Given the deference owed on factual conclusions, we cannot say that this is without evidentiary support.

made during the marriage, including the decision to not adequately plan for retirement. She was not incapable or unprepared to contemplate and prepare for the fact that, at some point, husband's income, and amount of support, might change or altogether cease. The wording of the opinion letter is telling: "Mr. Baker did absolutely no planning for retirement . . . . The parties separated in 2016 already in their sixties. Mr. Baker certainly was aware that at some point he would want to retire, yet he continued to spend all that he made." Yet each of these statements apply with equal force to wife (down to her current budget being dependent on husband's continued payment of support). Further, placing this responsibility and blame solely on husband for this shared circumstance, with no mention of wife, ignores the trial court's own finding that neither party had thought about or planned for retirement at the time they negotiated, and the court awarded, spousal support only a few years prior. *See* Code § 20-109(F)(1). Even if one spouse earns the majority of the marital income, it does not follow that the responsibility for retirement planning necessarily falls solely upon that spouse. Accordingly, because retirement planning is a shared marital responsibility, absent some reason that one party is unable to participate in that planning, the trial court, by holding husband solely responsible, reached a conclusion that lacked justification and evidentiary support.

## III. CONCLUSION

Emphasizing once again that each of these cases is inherently fact-specific, we conclude that the trial court abused its discretion in imputing husband's entire pre-retirement income to him. Accordingly, we reverse and remand.

*Reversed and remanded.*