PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Kelsey, Beales and Decker
Argued at Chesapeake, Virginia

ROY M. CARRITHERS

v.   Record No. 0601-13-1

KIMBERLY A. HARRAH

OPINION BY
JUDGE D. ARTHUR KELSEY
SEPTEMBER 2, 2014

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
David F. Pugh, Judge

Blanche M. Garber (BMGLAW LLC, on briefs), for appellant.

Jeffrey F. Riddle (Cowardin, Kim, Smith, Anderson & Riddle,
PLC, on brief), for appellee.

Roy M. Carrithers appeals an order from the circuit court rejecting on res judicata

grounds his latest in a series of proceedings seeking to set aside a child support arrearage ordered

in 2006. Carrithers also appeals the court's imposition of sanctions for abusing the litigation

process. Finding no fault with the court's reasoning or result on either issue, we affirm.

I.

In 1993, the circuit court entered a divorce decree ending the marriage between Carrithers

and Kimberly A. Harrah. One child was born during the marriage. Awarding custody of the

child to Harrah, the circuit court ordered Carrithers to pay $325 per month in child support. The

circuit court then transferred all further issues involving child custody and support to the juvenile

and domestic relations district court ("JDR court"). Carrithers never paid any of the court-

ordered child support.

In 2006, the JDR court awarded Harrah $62,096.06 in child support arrearage plus 6%

interest. Carrithers failed to make an appearance, and the JDR court entered a default judgment.

In 2010, Carrithers filed a motion in the JDR court asserting that the default judgment should be

vacated because of an alleged violation of the service of process requirements in Code § 16.1-278.18. This violation, Carrithers argued, deprived the court of personal jurisdiction and rendered its judgment void. The JDR court denied the motion, holding that it had continuing jurisdiction based upon the original divorce decree to enforce the support order.

Carrithers appealed to the circuit court seeking a *de novo* review of his motion to vacate. On March 29, 2011, the circuit court entered an order holding that Harrah's service of process satisfied the requirements of Code § 16.1-278.18 and that the JDR court thus had personal jurisdiction over Carrithers for the entry of a child support arrearage. In a later, separate order, the circuit court awarded $5,825 in attorney fees to Harrah. Carrithers filed an appeal to our Court asserting that the circuit court misapplied Code § 16.1-278.18 and erroneously failed to vacate the 2006 JDR court arrearage order. That conclusion, Carrithers contended, meant that the circuit court also erred in awarding attorney fees.

In Carrithers v. Harrah, 60 Va. App. 69, 723 S.E.2d 638 (2012), we held that Carrithers had filed his notice of appeal within thirty days of the attorney fee award order but not within thirty days of the order declaring valid the 2006 JDR court arrearage order. We dismissed as untimely his appeal of the order declaring valid the 2006 JDR court arrearage order. We carefully noted, however, that the notice of appeal was timely for purposes of challenging the attorney fee award order. But we rejected that challenge on res judicata grounds because the underlying circuit court order declaring valid the 2006 JDR court arrearage order (which Carrithers failed to timely appeal) could no longer be challenged. Explaining this point, we chose our words quite carefully:

> It is true that Carrithers' notice of appeal was filed within thirty days of the trial court's August 1, 2011 order awarding Harrah $5,825 in attorneys' fees. Although Carrithers' second assignment of error challenges this award of attorneys' fees, *the doctrine of res judicata*

- 2 -

*bars our consideration of the sole argument he raises under this assignment of error.* Carrithers' only argument challenging the award of attorneys' fees is that the JDR court — and derivatively the trial court — lacked personal jurisdiction over him. This issue of personal jurisdiction was an issue "finally and conclusively resolved" by the trial court's March 29 order. See Hall[v. Hall], 9 Va. App. [426,] 428, 388 S.E.2d [669,] 670 [(1990)]. Therefore, since Carrithers did not timely appeal from the March 29 order, *the doctrine of res judicata* bars him from arguing the issue of personal jurisdiction in this appeal. See id. at 428-29, 388 S.E.2d at 670.

Carrithers, 60 Va. App. at 76 n.2, 723 S.E.2d at 641 n.2 (emphasis added).

Despite our application of res judicata to the March 2011order, shortly after receiving our opinion, Carrithers filed another motion in 2012 in the JDR court seeking to vacate the 2006 JDR court arrearage order. The parties were the same as before, and so were the factual and legal issues. The JDR court held that res judicata barred further relitigation of the matter. The circuit court's final order of March 2011, the JDR court reasoned, had become final and was undisturbed on appeal. The JDR court also found that Carrithers had abused the litigation process and ordered that he pay $4,500 in sanctions to compensate Harrah for her legal fees.

Carrithers appealed the JDR court's order applying res judicata to the circuit court's March 2011 order. Reviewing the matter *de novo*, the circuit court likewise held that its prior March 2011 order was final and unaffected by his untimely, and thus unsuccessful, appeal to our Court. The circuit court also found that Carrithers should be sanctioned and awarded $2,000 to Harrah. The circuit court entered its final order embodying these rulings on February 26, 2013. Carrithers now challenges this latest ruling in the present appeal.

II.

A. RES JUDICATA – RELITIGATING VOIDNESS

Carrithers raises several arguments on appeal. All of them, however, are variations on a single syllogism: The 2006 JDR court arrearage order is void because service of process did not

- 3 -

comply with Code § 16.1-278.18, thus precluding the JDR court from obtaining personal jurisdiction over him.[1] Void orders can be challenged by any court, at any time, in any manner. Thus, Carrithers argues, we should reverse the circuit court's February 2013 order because it failed to declare the 2006 JDR court arrearage order void.

The superficial logic of Carrithers's argument misses one crucial point: Whether the 2006 JDR court arrearage order is void has *already* been decided. The circuit court's March 2011 order held that the service of process leading up to the 2006 JDR court arrearage order did not violate Code § 16.1-278.18, and thus, the order is not void. The circuit court's February 2013 order held that res judicata barred any reconsideration of that conclusion. It is this February 2013 order applying res judicata (not the March 2011 order addressing Code § 16.1-278.18) that is now before us on appeal.

Framed properly, the only issue on appeal we must decide is whether a final judicial order on the merits — otherwise entitled to res judicata effect[2] — loses that status merely because it declares (allegedly in error) an earlier order not to be void. The answer is, and necessarily must be, no.

A litigant who believes he is subject to a void order may seek judicial relief either on direct appeal or in a collateral attack. But if a court of competent jurisdiction rules against him and declares the challenged order to be valid, that declaration is *itself* entitled to res judicata effect. If that were not the case, the litigant could file (as Carrithers has begun to do here) an endless *seriatim* of unsuccessful collateral attacks in hopes of finding a judge who agrees with

---

[1] See generally Glumina Bank v. D. C. Diamond Corp., 259 Va. 312, 316, 527 S.E.2d 775, 777 (2000); Dennis v. Jones, 240 Va. 12, 19, 393 S.E.2d 390, 394 (1990).

[2] It is important that the March 2011 order was a decision on the merits. Res judicata is inapplicable to final orders that are not. See Painter v. Commonwealth, 47 Va. App. 225, 237, 623 S.E.2d 408, 414 (2005); see also Rule 1:6(a) (requiring a "decision on the merits").

him.  Carrithers cites no legal precedent supporting such an aberrant result, and our own research reveals none that do.

The history of the res judicata doctrine rules out even the possibility of Carrithers's view. Res judicata traces its "origin to no statute or rule of the common law."  Martin P. Burks, Common Law & Statutory Pleading & Practice § 357, at 672 (4th ed. 1952).  Whatever its precise origins, res judicata "is a fundamental concept in the organization of every jural society." 2 Henry Campbell Black, A Treatise on the Law of Judgments: Including the Doctrine of Res Judicata § 500, at 760 (2d ed. 1902).[3]  It protects not only the individual litigant from the weariness of trying the same case twice, but also society from having to pay for it.[4]  The incremental cost of sustaining redundant litigation is itself a reason for insisting upon finality. So strong are these policies that it has been said that "res judicata renders white that which is black, and straight that which is crooked."  Jeter v. Hewitt, 63 U.S. 352, 364 (1860).

No matter how robust the repose policy underlying res judicata, however, it does not protect a truly void order from scrutiny.  "An order void *ab initio* is without effect from the moment it came into existence and can be attacked by all persons, anywhere, at any time, or in any manner."  Winslow v. Commonwealth, 62 Va. App. 539, 544, 749 S.E.2d 563, 566 (2013)

---

[3] See generally Allen v. McCurry, 449 U.S. 90, 94 (1980); Hart Steel Co. v. R.R. Supply Co., 244 U.S. 294, 299 (1917) ("This doctrine of res judicata is not a mere matter of practice or procedure inherited from a more technical time than ours.  It is a rule of fundamental and substantial justice, of public policy and of private peace, which should be cordially regarded and enforced by the courts to the end that rights once established by the final judgment of a court of competent jurisdiction shall be recognized by those who are bound by it in every way, wherever the judgment is entitled to respect." (internal quotation marks omitted)).

[4] See generally Bates v. Devers, 214 Va. 667, 670, 202 S.E.2d 917, 920 (1974) ("[R]es judicata rests upon considerations of public policy which favor certainty in the establishment of legal relations, demand an end to litigation, and seek to prevent the harassment of parties." (citing Pickeral v. Fed. Land Bank of Balt., 177 Va. 743, 750, 15 S.E.2d 82, 84-85 (1941) (other citation omitted))).

(internal quotation marks and citation omitted).  But that does not mean a litigant can litigate the voidness issue *ad infinitum*.  Once a court of competent jurisdiction declares a prior order to be either void or valid, that declaration — if it becomes final and subject to no further appeals — is itself entitled to the protection of res judicata.

The Restatement (Second) of Conflict of Laws explains the traditional view on this subject.  In comment c to § 96, which addresses "[w]hen jurisdiction in one action is determined in [a] subsequent action," the Restatement explains that the rule is "similar" to the situation (described in comment b) where a party makes a special appearance in a case to challenge personal jurisdiction, which, if lacking, would render a later judgment void.  If the court rules against the party and that decision becomes final, the party cannot later make a collateral attack in a separate proceeding seeking to relitigate the issue.[5]

For the same reason, the Restatement observes, res judicata applies when a party first raises the voidness claim in a subsequent proceeding (seeking to vacate an earlier final judgment) only to lose the issue on the merits when the second court upholds the validity of the first:

> A situation of this sort arises when a judgment is rendered against
> the defendant by default in State X and when the judgment is
> sought to be enforced in State Y the defendant contends that the X
> judgment is void because the X court had no jurisdiction over him.
> If the Y court finds that the X court did have jurisdiction over the

---

[5] "If the State where the judgment was rendered has the usual rules of res judicata, the effect of the court's finding that it had jurisdiction over the defendant will be to preclude the parties from attacking the judgment collaterally in the State on the ground that the court had no jurisdiction over the defendant.  If so, the parties will similarly be precluded from attacking the judgment in other States."  Restatement (Second) of Conflict of Laws § 96 comt. b (1971); see Bloodworth v. Ellis, 221 Va. 18, 21, 267 S.E.2d 96, 98 (1980) (explaining that when a "second court's inquiry 'discloses that those [jurisdictional] questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment,' the second court is precluded from re-examining the jurisdiction of the court rendering the original judgment" (quoting Durfee v. Duke, 375 U.S. 106, 111 (1963))); accord Wall v. Stinson, 983 P.2d 736, 741 (Alaska 1999); Morabito v. Wachsman, 463 A.2d 593, 596 (Conn. 1983); Undrey Engine & Pump Co. v. Eufaula Enters., Inc., 597 P.2d 246, 249 (Kan. 1979); Dep't of Human Servs. v. Shelnut, 772 So.2d 1041, 1046 (Miss. 2000).

defendant, the question whether the defendant is precluded from again raising the issue of the X court's jurisdiction over him in Y or in another State will be determined in accordance with Y local law. The defendant will be so precluded from again raising the issue of the X court's jurisdiction if Y has the ordinary rules of res judicata.

Restatement (Second) of Conflict of Laws § 96 comt. c & illus. 2 (1971) (addressing the issue in the interstate, multi-court context).[6] See, e.g., Treinies v. Sunshine Mining Co., 308 U.S. 66, 78 (1939) (finding that the second court's invalidation of the first court's jurisdiction, even if erroneous, was res judicata and binding on the third court); Southard v. Southard, 305 F.2d 730, 732 (2d Cir. 1962) (same); United States v. 171.74 Acres of Land, 206 F. Supp. 322, 325 (D. Neb. 1962) (same).

In short, under the "ordinary" and "usual rules of res judicata," Restatement (Second) Conflict of Laws § 96 comts. b & c — which Virginia traditionally has applied — a final ruling by a court of competent jurisdiction ends all litigation over the validity or invalidity of a prior order. And that is just what happened in this case. In 2011, Carrithers litigated the very issue that he now asserts. He claimed that the 2006 JDR court arrearage order was void because the court lacked personal jurisdiction over him. The circuit court in March 2011 disagreed and declared on the merits that the 2006 JDR court arrearage order was valid. When that March 2011 declaration became final, Carrithers appealed to our Court. After finding his challenge to the 2006 JDR court arrearage order procedurally barred by an untimely notice of appeal, we expressly pointed out that his challenge to the award of attorney fees (while timely) was itself barred by res judicata. Then, as now, we explained that the March 2011 order "finally and

---

[6] See also Restatement (Second) of Judgments § 15 cmt. c & illus. 1, 2 (1982); Restatement (Second) of Conflict of Laws § 114 cmt. b, illus. 2 (1971); Robert A. Leflar, American Conflicts Laws § 81, at 163 (3d ed. 1978).

conclusively resolved" the "issue of personal jurisdiction" arising out of the 2006 JDR court arrearage order. Carrithers, 60 Va. App. at 76 n.2, 723 S.E.2d at 641 n.2.[7] His later attempt to relitigate the unlitigable violated traditional res judicata law as well as our application of it to the very same dispute between the very same parties.[8]

### B. SANCTIONS UNDER CODE § 8.01-271.1

In its most recent order, now on appeal to us, the circuit court sanctioned Carrithers under Code § 8.01-271.1 and awarded Harrah $2,000 in partial compensation for her attorney fees incurred during the defense of the second proceeding. Because Carrithers raised the same argument (involving the same facts, parties, and legal issues) previously rejected on the merits and left undisturbed on appeal, the circuit court concluded that Carrithers was engaging in abusive litigation — just the kind for which the remedies in Code § 8.01-271.1 were meant to deter. We agree.

Code § 8.01-271.1 provides, in part, that the signature of an attorney on any pleading, written motion, or other writing constitutes a certificate that "to the best of his knowledge,

---

[7] Carrithers did not appeal our decision to the Virginia Supreme Court, and indeed, Carrithers conceded this fact. See Oral Argument Audio at 9:45 to 9:50.

[8] We acknowledge Carrithers's citation to Garritty v. Va. Dep't of Soc. Servs., 11 Va. App. 39, 396 S.E.2d 150 (1990). The holding of Garritty, however, addressed res judicata only in the limited extent of setting aside the effect of Rule 1:1 finality on a void order, thus giving the trial court authority to declare it void. See id. at 43, 396 S.E.2d at 152 (citing Norfolk Div. of Soc. Servs. v. Unknown Father, 2 Va. App. 420, 427, 345 S.E.2d 533, 537 (1986)) (addressing only the initial court's authority to vacate a void order "without regard to time limitation contained in Rule 1:1"). Neither the holding nor the reasoning of Garritty specifically addressed the res judicata effect of a valid circuit court order, undisturbed on appeal, holding that a prior order was not void. See App. at 190, 196 (trial judge correctly distinguishing Garritty from this case). "Under Virginia law, *stare decisis* does not foreclose inquiry into an issue not previously raised, discussed, or decided." Moses v. Commonwealth, 45 Va. App. 357, 364 n.4, 611 S.E.2d 607, 610 n.4 (2005) (internal quotation marks omitted); see also Smith v. Commonwealth, 281 Va. 464, 469, 706 S.E.2d 889, 893 (2011) (recognizing that cases cited by the appellant "do not have precedential value or application in this case because the proper disposition of an appeal under the circumstances presented here was not an issue in any case [appellant] cites").

information and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law" and that "it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." When applying Code § 8.01-271.1, courts should apply "'an objective standard of reasonableness' to determine whether an attorney, 'after reasonable inquiry, could have formed a reasonable belief that the pleading was warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.'" Shebelskie v. Brown, 287 Va. 18, 27, 752 S.E.2d 877, 882 (2014) (quoting Gilmore v. Finn, 259 Va. 448, 466, 527 S.E.2d 426, 435 (2000)).

On appeal, we apply a deferential standard of review. A decision to "impose" sanctions, Shebelskie, 287 Va. at 26, 752 S.E.2d at 881, as well as a decision to "deny" sanctions, Norfolk S. Ry. Co. v. E. A. Breeden, Inc., 287 Va. 456, 469, 756 S.E.2d 420, 427 (2014), can be reversed on appeal only if the trial court abuses its discretion. An abuse of discretion occurs "only 'when reasonable jurists could not differ'" as to the proper decision. Brandau v. Brandau, 52 Va. App. 632, 641, 666 S.E.2d 532, 537 (2008) (quoting Robbins v. Robbins, 48 Va. App. 466, 482, 632 S.E.2d 615, 623 (2006)).

This highly deferential standard of review, of course, does not "simply mean that a circuit court may do whatever pleases it." Shebelskie, 287 Va. at 26, 752 S.E.2d at 881 (internal quotation marks omitted). It does mean that, for some decisions, "conscientious jurists could reach different conclusions based on exactly the same facts — yet still remain entirely reasonable." Hamad v. Hamad, 61 Va. App. 593, 607, 739 S.E.2d 232, 239 (2013). The trial court "has a range of choice, and its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." Lawlor v. Commonwealth, 285 Va. 187,

212-13, 738 S.E.2d 847, 861 (2013) (alteration and internal quotation marks omitted). We apply this "bell-shaped curve of reasonability" based on our "venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." Hamad, 61 Va. App. at 607, 739 S.E.2d at 239.

In this case, the circuit court did not abuse its discretion in awarding $2,000 in attorney fees to Harrah. By any objectively reasonable measure, Carrithers's latest collateral attack on the 2006 JDR court support arrearage award was not "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Id. Nor can he persuasively say that it was "not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Id.

To be sure, Carrithers's approach would legitimate endless litigation over the allegedly void order from 2006. We could say on appeal, as we are now saying and previously said in our prior opinion in 2012, that res judicata attaches to the March 2011 circuit court order — but, according to Carrithers, saying so would not make it so. Instead, he could continue indefinitely filing suits seeking to challenge the 2006 JDR court arrearage order until he found a judge who agreed with him.

Needless to say, Virginia courts have no interest in thwarting innovative and scholarly challenges to existing law, particularly when they point out ahistorical assumptions that sometimes creep into our jurisprudence. Code § 8.01-271.1 expressly protects "good faith" arguments seeking "the extension, modification, or reversal of existing law." What it does not protect, however, are insupportable claims about the present scope of existing law. It is one thing to acknowledge the existing state of the law and argue for what some might think would be an improvement. It is quite another to claim erroneously that existing law does not exist.

Here, Carrithers does not advocate for any modifications to existing res judicata law. Instead, he claims the present state of the law is perfectly clear: A void order does not receive res judicata protection. That is true as far as it goes. But this established legal maxim does not mean — nor, as far as we know, has any court interpreted it to mean — that an order issued by a court of competent jurisdiction rejecting a collateral attack on a prior, allegedly void, order does *not* receive res judicata protection simply because the losing party disagrees with it.[9]

### III.

In sum, the circuit court correctly applied res judicata to bar Carrithers's latest attempt to collaterally attack the 2006 JDR court arrearage order. The court also acted within its discretion in ordering Carrithers to pay $2,000 toward Harrah's attorney fees, pursuant to Code § 8.01-271.1. We thus affirm.

Affirmed and remanded.[10]

---

[9] One of Carrithers's assignments of error also addresses the circuit court's determination that certain documents were not part of the circuit court record because "[t]hey were never offered, admitted, raised, or argued" in the circuit court. App. at 430. We need not address this assignment of error as our holding moots this point.

[10] In domestic relations cases, we award appellate attorney fees when the arguments on appeal are "not fairly debatable under any reasonable construction of the record or the governing legal principles. We have no reluctance imposing fees in such circumstances." Brandau, 52 Va. App. at 642, 666 S.E.2d at 538 (citing O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996)). Like the circuit court, we do not believe Carrithers's arguments are fairly debatable or that his litigation strategy can be supported by even a generous inference of good faith. We thus remand this case to the circuit court for an award of all attorney fees incurred by Harrah on appeal and any reasonable fees incurred by Harrah on remand.