COURT OF APPEALS OF VIRGINIA

Present:    Judges O'Brien, Malveaux and Callins
Argued at Alexandria, Virginia


JAMES A. DEVITA

v.         Record No. 0489-21-4

JASON MILLER AND
  MARK BODNER, ESQUIRE

MEMORANDUM OPINION[*] BY
JUDGE MARY GRACE O'BRIEN
SEPTEMBER 20, 2022


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
David A. Oblon, Judge[1]

James A. DeVita, *pro se*.

No brief or argument for appellee Jason Miller.

Mark Bodner, Guardian *ad litem* for Jason Miller.


James A. DeVita appeals an order granting a motion for sanctions filed by a guardian *ad litem* (GAL), Mark Bodner. DeVita contends that the court erred by sanctioning him for conduct that "did not involve written pleadings or an oral motion" and was not "deliberate or intentional." He also argues that the court erred by failing to "set out an explanation for [its] factual conclusions."[2]

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Although Judge Oblon entered the final divorce decree, Judge Grace Burke Carroll entered the sanctions order underlying this appeal.

[2] At oral argument, the GAL withdrew the motion he filed to dismiss the appeal. Additionally, in a companion case decided this day, *Jordan v. Miller*, No. 0156-22-4 (Va. Ct. App. Sept. 20, 2022), we affirmed an order denying a motion for sanctions against the GAL.

BACKGROUND[3]

In October 2019, Janella Jordan (wife) filed for divorce from Jason Miller (husband), an incarcerated felon. The complaint alleged that the parties were married for ten months, had no children, and had been separated since January 1, 2013. Wife requested a divorce based on a one-year separation under Code § 20-91(A)(9)(a), an award of "her own separate property," and an "equitable share of the parties' marital property."

Because husband was incarcerated, the court appointed Bodner as his GAL. *See* Code § 8.01-9(A) (requiring the appointment of a GAL to "represent the . . . interest" of a defendant who is "under a disability"); Code § 8.01-2(6)(a) (defining "[p]erson under a disability" to include an incarcerated felon).

The GAL's answer did not dispute the ground for divorce but contested equitable distribution because wife did not claim that the parties "ha[d] marital or other property or debts that require determination and distribution."

Wife sent the GAL a proposed property settlement agreement (PSA), which included language that both parties waived support and property distribution. Under the proposed PSA, the parties would retain any assets and liabilities already titled in their respective names and wife would maintain the payments for a car acquired after the separation.

The GAL questioned the need for a PSA when wife's statutory ground for divorce did not require it. He served eight interrogatories on wife, mainly asking her to identify any marital or separate property. Wife responded that she had no significant assets other than her vehicle.

---

[3] There were no transcripts or timely filed written statements of fact for this appeal. Because the court's ruling was based primarily on pleadings and exhibits, which are set forth in the record, we conclude that a transcript or written statement is not necessary for resolution of the issues presented on appeal. *See* Rule 5A:8(b)(4)(ii).

Wife then propounded twelve interrogatories and over forty requests for production of documents. The GAL responded that wife's discovery requests "seem a bit over the top" and reiterated his inquiry about the need for a PSA or a trial date. He explained that the only reason he served the eight interrogatories was because, as the GAL, he needed to "assur[e] that [husband] does not miss out on recovery of any marital property." The GAL also filed objections, with grounds, to all of wife's discovery requests.

Wife's counsel, DeVita, pursued a motion to compel. By agreement, DeVita and the GAL appeared before a calendar control judge and obtained a hearing date of July 31, 2020.[4] However, DeVita failed to file the actual motion, so the court removed the matter from the docket.

On three subsequent occasions, DeVita emailed the GAL requesting his appearance before the calendar control judge to schedule the motion to compel. The GAL sent emails agreeing to the requested dates and asking DeVita to file written notices. The GAL in fact appeared on the three requested dates, but DeVita did not.

On August 31, the court advised the GAL that wife had set her motion to compel for September 4. The praecipe contained DeVita's certification that he had served the GAL on August 19. The GAL, however, did not actually receive the praecipe until the court forwarded a copy. The praecipe also contained DeVita's certification of compliance with Rule 4:15(b), which requires reasonable efforts to confer and resolve a motion before filing and "to determine a mutually agreeable hearing date and time." However, DeVita had taken neither action required by Rule 4:15(b). DeVita explained that he forgot to contact the GAL before setting the hearing, and he agreed to reschedule it.

---

[4] The court conducted calendar-control business by videoconference during that phase of the COVID-19 pandemic.

At the end of the rescheduled hearing, the court denied wife's motion to compel discovery on spousal support but ordered husband to respond to requests concerning equitable distribution, conditioned on the parties participating in conciliation. The conciliation did not occur.

The GAL moved for sanctions against DeVita and argued that DeVita had deliberately harassed him, increased the costs of litigation, and acted with "wilful [sic] indifference." The court heard arguments on January 29, 2021, and it reviewed copies of emails and other documents supporting the parties' positions. The GAL submitted evidence to show that he spent three hours dealing with DeVita's "abuse of the calendar control process."

The court entered an "Order for Sanction" based on Code § 8.01-271.1, finding that DeVita engaged in sanctionable conduct by emailing the GAL to arrange calendar control appearances, yet failing to appear on three occasions, and by filing a praecipe "falsely certifying" compliance with Rule 4:15(b). The court determined that DeVita acted with "reckless indifference" and "cause[d] needless expense," and it ordered him to pay the GAL $900.

Wife requested sanctions against the GAL and asked the court to remove the GAL from the case, deny his fees, and require him to pay her attorney fees.[5] The GAL responded that because wife filed her divorce complaint as a contested matter seeking equitable distribution, and later insisted on a PSA, his discovery requests limited to issues of marital and separate property were reasonable.

On May 7, 2021, the court denied wife's motion for sanctions against the GAL. The order reflected the court's finding that the GAL had "properly and faithfully performed his duties to represent and protect the interests of his ward [i.e., husband]" and that "no evidence was presented

---

[5] Wife's motions were heard and denied by Judge Thomas Mann, and she appealed that ruling separately. *See Jordan v. Miller*, No. 0156-22-4.

to establish that [the GAL] has filed pleadings needlessly in this matter or in any way violated any provision under [Code §] 8.01-271.1 . . . warranting an imposition of sanctions."

Ultimately, the parties were divorced, without a PSA, by an agreed order entered on July 23, 2021. The GAL sought and was awarded $750 in fees.

ANALYSIS

DeVita contends the court erred by granting the GAL's motion for sanctions. An appellate court reviews a decision to grant or deny sanctions for an abuse of discretion. *Carrithers v. Harrah*, 63 Va. App. 641, 653 (2014); *see Shebelskie v. Brown*, 287 Va. 18, 26 (2014) (reviewing a "decision to impose a sanction" for an abuse of discretion). "[W]hen a decision is discretionary . . . 'the court has a range of choice, and . . . its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" *Shebelskie*, 287 Va. at 26 (second and third alterations in original) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212-13 (2013)). The trial court's interpretation of Code § 8.01-271.1, the sanctions statute, raises a question of law that we review *de novo*. *See Conley v. Bonasera*, 72 Va. App. 337, 346 (2020).

1. Assignment of Error One: Sanctionable Conduct

DeVita first contends that the court erred in determining that his actions constituted sanctionable conduct under Code § 8.01-271.1. He is partially correct.

Code § 8.01-271.1(B) provides, in relevant part, that the signature of an attorney on any "pleading, motion, or other paper" certifies that the document is "well grounded in fact" and "not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Code § 8.01-271.1(B)(i)-(iii). An attorney's oral motion carries a similar certification. *See* Code § 8.01-271.1(C). "If a pleading, motion, or other paper is signed or made in violation of this section, the court . . . shall impose upon the person who signed the paper or made the motion . . . an appropriate sanction." Code § 8.01-271.1(D). The statute's purpose is to

"protect[] . . . the public" by "hold[ing] attorneys and pro se litigants to a high degree of accountability for the *assertions they make in judicial proceedings.*" *Shipe v. Hunter*, 280 Va. 480, 484 (2010) (emphasis added).

The court sanctioned DeVita both for emailing the GAL to schedule calendar control appearances, but failing to appear on three occasions, and for docketing wife's discovery motion without conferring with the GAL to select a mutually agreeable hearing date, despite certifying compliance with Rule 4:15(b). The court awarded attorney fees to compensate the GAL for his time before the calendar control judge, as well as time spent to remove the improperly docketed discovery motion.

DeVita's filing of the praecipe with the inaccurate Rule 4:15(b) certification falls squarely within the sanctions statute. The certification was not "grounded in fact," as DeVita had not actually conferred with the GAL to set the hearing date. *See* Code § 8.01-271.1(B)(ii). Additionally, the praecipe caused "needless increase in the cost of litigation" by requiring the GAL to have the motion removed and reset for another date. *See* Code § 8.01-271.1(B)(iii). The court's imposition of sanctions reflects the statute's "manifest purpose . . . to hold attorneys, who are officers of the court, responsible for specified failures involving the integrity of the documents that they have signed." *Williams & Connolly, L.L.P. v. People for Ethical Treatment of Animals, Inc.*, 273 Va. 498, 510 (2007).[6]

---

[6] The sanction order cited only Code § 8.01-271.1(C)(ii), which addresses oral motions. However, the order also made findings that support sanctions under Code § 8.01-271.1(B)(ii) and (iii), which address written submissions—specifically, that DeVita filed a praecipe "falsely certifying that he made an effort to select the date" with the GAL. Therefore, despite the court's reference to subsection (C)(ii), we affirm the portion of the award pertaining to DeVita's praecipe under the "right result, wrong reason" doctrine. *See Driscoll v. Commonwealth*, 14 Va. App. 449, 452 (1992) ("An appellate court may affirm the judgment of a trial court when it has reached the right result for the wrong reason.").

However, DeVita's emails and nonappearance before the calendar control judge are not subject to the sanctions statute. Although Code § 8.01-271.1(B) refers to "other paper" in addition to pleadings and motions, that phrase itself does not extend the statute to private emails between counsel. *Cf. Shipe*, 280 Va. at 484 (noting that the sanctions statute contemplates filings, motions, and "assertions [made] in judicial proceedings"). The emails were neither court filings nor discovery documents. *See Flora v. Shulmister*, 262 Va. 215, 221 & n.5 (2001) (acknowledging that Code § 8.01-271.1 authorizes sanctions for discovery violations).[7] The GAL himself assumed that DeVita would file a formal praecipe: he asked DeVita to "PLEASE send me a notice for calendar control" and "please send me a written notice of your intention to move the calendar control judge" after expressing availability for the proposed dates. DeVita's emails proposing dates were not sufficient to require either party to appear at calendar control. Additionally, nothing in Code § 8.01-271.1(C), governing oral motions, authorizes a court to sanction an attorney for failing to appear after informal email notice to opposing counsel; a nonappearance is not an oral motion under the statute. *See Shebelskie*, 287 Va. at 27-28 (strictly construing the statutory phrase "oral motion"). DeVita's emails and nonappearance, although arguably inconsiderate and unprofessional, were not sanctionable. Therefore, the court was "influenced by [a] mistake of law" and abused its discretion by sanctioning DeVita for this conduct. *See id.* at 28 (alteration in original) (quoting *Lawlor*, 285 Va. at 213).

The record supports a finding that DeVita's praecipe with the inaccurate certification caused needless expense because it was not well grounded in fact and was interposed for an improper purpose. *See* Code § 8.01-271.1(B)(ii), (iii). However, to the extent that the $900 award compensated the GAL for time spent appearing before the calendar control judge in response to

---

[7] We note that Rule 4:1(g) also authorizes sanctions for discovery violations, using language similar to that found in Code § 8.01-271.1.

DeVita's emails, which were not sanctionable, the award reflects an abuse of discretion and must be recalculated.

## 2. Assignment of Error 2: Deliberate or Intentional Conduct

DeVita contends that Code § 8.01-271.1 required proof of deliberate or intentional conduct establishing that he acted in bad faith. He characterizes the sequence of events as a "breakdown in communications between the parties in trying to schedule the motions hearing." Although he acknowledges failing to confer with the GAL before docketing the motion despite certifying that he did so, DeVita denies that his behavior was deliberately or intentionally designed to harass the GAL or delay litigation. DeVita relies on *Ragland v. Soggin*, 291 Va. 282 (2016), in which the Supreme Court reversed a sanctions award because an attorney's submission of an incorrect jury instruction was an "inadvertent mistake." 291 Va. at 292.

DeVita's reliance on *Ragland* is misplaced. Although it is true the Court held that "nothing in Code § 8.01-271.1 . . . gives a trial judge authority to impose monetary sanctions . . . for . . . an inadvertent mistake," *id.*, it is also true that nothing in the statute requires a showing of deliberate or intentional misconduct. Code § 8.01-271.1(B)(iii) authorizes sanctions when a filing is interposed for an improper purpose. Here, the record clearly demonstrates that DeVita unilaterally scheduled the motion without concern for the GAL's availability. This conduct, which the court found to be "reckless indifference," caused a "needless increase in the cost of litigation" and an "unnecessary delay," both examples of an "improper purpose" required by Code § 8.01-271.1(B)(iii). The statute also authorizes sanctions when an attorney fails to determine after a reasonable inquiry that his filing is well grounded in fact. *See* Code § 8.01-271.1(B)(ii). The court was not required to find that DeVita intentionally or deliberately failed to perform the reasonable inquiry; DeVita's reckless indifference as to the accuracy of his Rule 4:15(b) certification established a violation of this subsection.

Unlike the sanctions statute, criminal contempt requires a finding of deliberate or intentional conduct. *See, e.g.*, *Singleton v. Commonwealth*, 278 Va. 542, 549 (2009) (stating that, in criminal contempt proceedings, "it is essential to consider whether the accused intended to undermine [the court's] authority"); *Robinson v. Commonwealth*, 41 Va. App. 137, 143 (2003) (finding intent a necessary element of criminal contempt).

DeVita invites us to graft a similar intent requirement onto Code § 8.01-271.1(B). We decline the invitation. Recognizing that inadvertent mistakes are not sanctionable, we nevertheless conclude that, here, DeVita's reckless indifference toward opposing counsel and the court established a violation of Code § 8.01-271.1. *See Williams & Connolly, L.L.P.*, 273 Va. at 510.

3. Assignment of Error 3: Court's Failure to Explain Factual Findings

DeVita argues that the court erred by failing to explain its factual findings—specifically, why it found the GAL more credible than DeVita. He argues that, without explaining the basis for its credibility determination, the court lacked an adequate factual basis to order sanctions.

Rule 5A:18 precludes our consideration of this assignment of error. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. To preserve an issue for appellate review, an appellant must timely and specifically object to trial court rulings "so that the trial court has 'an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals.'" *Brown v. Commonwealth*, 279 Va. 210, 217 (2010) (quoting *West v. Commonwealth*, 43 Va. App. 327, 337 (2004)).

DeVita claims he preserved the issue in a document titled "Second Supplemental Opposition to [the GAL's] Motion for Sanctions." In this document, DeVita disputed the GAL's contention that they agreed to appear at calendar control on certain days. The document did not contend, as

DeVita does here on appeal, that the court failed to explain why it credited the GAL's version of events over DeVita's. The document was filed before the court issued its ruling; it was not an objection to the court's sanction award. Because DeVita did not present his argument to the trial court, he failed to preserve the issue for appellate review and we will not consider it. *See* Rule 5A:18; *Milam v. Milam*, 65 Va. App. 439, 465 (2015) (declining to consider an assignment of error premised on argument not presented to the trial court).

### 4. GAL's Request for Costs on Appeal

The GAL asks this Court to award him the costs he expended on this appeal. Generally, an award of appellate fees and costs is appropriate only if a party "generated unnecessary delay or expense in pursuit of its interests," *Tyszcenko v. Donatelli*, 53 Va. App. 209, 225 (2008) (quoting *Estate of Hackler v. Hackler*, 44 Va. App. 51, 75 (2004)), or the appeal is "frivolous," *O'Loughlin v. O'Loughlin*, 23 Va. App 690, 695 (1996). Upon review of the record, we do not find that an award of appellate costs is appropriate in this case and we deny the GAL's request.

### CONCLUSION

The record supports sanctioning DeVita for filing a praecipe with an inaccurate certification of compliance with Rule 4:15(b). However, the court abused its discretion in sanctioning DeVita for his emails to the GAL and nonappearance before the calendar control judge. We reverse the amount of the sanction award based on that error and remand to the court for a recalculation consistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*

Callins, J., concurring.

I agree with the majority that DeVita's act of signing the praecipe with an inaccurate Rule 4:15 certification constituted sanctionable conduct and that DeVita failed to preserve his assignment of error related to the trial court's factual findings. I write separately because I conclude that Code § 8.01-271.1(B)(iii) requires a finding of intent.

Code § 8.01-271.1 states in relevant part,

> The signature of an attorney or party constitutes a certificate by him that (i) he has read the pleading, motion, or other paper, (ii) to the best of his knowledge, information and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and (iii) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Code § 8.01-271.1(B). The statute authorizes the imposition of sanctions for a pleading signed or made in violation of the above-stated provisions. Code § 8.01-271.1(D). By signing a written submission to the court, an attorney affirms each of the three parts of subsection B. Thus, when a court determines that an attorney (1) *has not* read the submission, (2) *has not* performed reasonable inquiry to ensure that the submission is well-grounded in fact or (3) *has* interposed the submission for an improper purpose, such conduct violates the proscriptions of the statute.

Violation of the first two requirements indicates an act of omission due to inadvertence, negligence, or intentional conduct. A party may fail to act for many reasons, including mistake, accident, sloth, or strategy. But a violation of the last subclause requires an affirmative act made with a specific intention: that a submission be made to the court for an *improper* purpose.

For three reasons, I find that the phrase "interposed for any improper purpose" connotes an intentionality requirement. First, this interpretation can be gleaned from the plain language of the statute: it does not merely require an attorney to certify that the document is not "interposed," it requires the attorney to make a statement about his *purpose* for filing the document. And a person

cannot purposefully be negligent or reckless because purpose is, by definition, intention. *See Purpose*, *The New Oxford American Dictionary* (2d ed. 2005) ("have as one's intention or objective").[8] The legislature chooses its words with care, and it would not have required an inquiry into whether an attorney had an improper *purpose*, unless it meant for the court to inquire about the attorney's intentions. *See Epps v. Commonwealth*, 47 Va. App. 687, 707 (2006) (*en banc*) ("We must . . . assume that the legislature chose, with care, the words it used when it enacted the relevant statute." (quoting *Barr v. Town & Country Properties, Inc.*, 240 Va. 292, 295 (1990))).

Second, Code § 8.01-271.1 imposes a good faith requirement. *Adkins v. CP/IPERS Arlington Hotel LLC*, 293 Va. 446, 451 (2017). The term "good faith" is defined as "a state of mind consisting in . . . honesty of belief and purpose . . . [and] absence of intent to defraud or seek unconscionable disadvantage." *Good Faith*, *Black's Law Dictionary* (11th ed. 2019). Therefore, bad faith would signify a contrary state of mind: one directed at dishonesty, subterfuge, deceit, or misdirection. And such a state of mind can only operate intentionally. *See Ragland v. Soggin*, 291 Va. 282, 292 (2016) (explaining that "there is nothing in Code § 8.01-271.1 that gives a trial judge authority to impose monetary sanctions . . . for . . . an inadvertent mistake").

Sanctions imposed under the statute are meant to protect the legal process from abuse. *See Taboada v. Daly Seven, Inc.*, 272 Va. 211, 216 (2006) (finding that ridiculing and deriding the Court is an improper purpose). The statute provides examples of such abuse: harassment, unnecessary delay, and needless increase in the cost of litigation. Intense, protracted litigation may

---

[8] Several definitions of the word "purpose" reference intent: *See Purpose*, *William C. Burton*, *Legal Thesaurus* (Deluxe ed. 1980) (defining the word as "design (*intent*)"); *On Purpose*, *Webster's Third New International Dictionary* (2002) (defining the term as "by deliberate intent and not by accident"). Indeed, some argue the use of the word "purpose" connotes a definition more restrictive than that of the word "intention." *See Purpose*, *Bryan A. Garner*, *A Dictionary of Modern Legal Usage* (2d ed. 2001) ("Statutory drafters sometimes use purpose as if it were synonymous with intention. But as Glanville Williams has observed, purpose ought not to include recklessness or mere knowledge of probability, as intention generally does." (citing *Textbook of Criminal Law* 93 (1978))).

result in delay and increased cost, but that alone is not abusive. In fact, it is common. It would be illogical to conclude that any delay or increase in cost is abusive. Instead, only intentional, *purposeful*, delays can constitute abuse of the judicial system. So, when considering the imposition of sanctions under subsection (B)(iii), the court must look to the purpose of the submission, not the result.

Finally, prior decisions upholding sanctions awards implicating subsection (B)(iii) have done so only upon finding the sanctioned conduct objectively intentional. In affirming a trial court's sanctions award, the Supreme Court previously considered determinative the "ample evidence in the record" demonstrating the sanctioned party's intention to intimidate the opposing party and the party's full awareness of the resulting excessive litigation costs incurred by both parties. *Kambis v. Considine*, 290 Va. 460, 468-69 (2015) (noting that the appellant filed over nineteen claims "in a manner that demonstrated [the appellant] was less interested in vindicating his rights and more interested in intimidating and injuring" the other party). *See also Northern Va. Real Estate, Inc. v. Martins*, 283 Va. 86, 116 (2012) (affirming sanctions when the Court concluded that attorneys filed so "many frivolous claims, supported by such wild speculation" that it was clear the claims were "filed out of a vindictive and malevolent desire to injure and intimidate a business competitor"); *Williams & Connolly, L.L.P. v. People for the Ethical Treatment of Animals, Inc.*, 273 Va. 498, 519 (2007) (affirming sanctions imposed based on attorneys' use of "[c]ontemptuous language and distorted representations" which the Court determined "serve[d] only to deride the court in an apparent effort to provoke a desired response").

The Supreme Court has recognized that the purpose of a trial court's authority to impose monetary sanctions is not to punish the attorney, but to safeguard the administration of justice and to protect the public. *See, e.g.*, *Nusbaum v. Berlin*, 273 Va. 385, 400 (2007). Absent an intent requirement, the language of subsection (B)(iii) may be construed as little more than indiscriminate

authority to punish, and for conduct that is merely bad form but not bad faith. *See Environmental Specialist, Inc. v. Wells Fargo Bank Northwest, N.A.*, 291 Va. 111, 121 (2016) (noting "a difference between behavior that . . . falls short of aspirational standards, and behavior that is subject to discipline and/or sanctions").

Despite this difference in the interpretation of Code § 8.01-271.1(B)(iii), I agree with the majority that the trial court did not err in awarding sanctions against DeVita. The trial court found that DeVita filed the praecipe and "falsely [certified] that he made an effort to select the date for hearing on said motion with [the GAL]." Although DeVita contends that his conduct in filing a praecipe with an erroneous Rule 4:15 certification was inadvertent, the record supports a finding that the praecipe was not "well grounded in fact" and that any knowledge, information, or belief he may have formed of the same was not "after reasonable inquiry," in violation of Code § 8.01-271.1(B)(ii). The record also supports a finding that DeVita filed the praecipe for the improper—and intentional—purpose of harassing the GAL. The relationship between the attorneys may fairly be characterized as aggressive and tense. DeVita scheduled several calendar control hearings for which he did not appear, although the GAL did. And DeVita withdrew his praecipe only after the GAL advised that DeVita signed it in violation of Rule 4:15. The record supports a finding under either subsection. *See Williams & Connolly, L.L.P.*, 273 Va. at 510 ("Because an attorney certifies compliance with all three enumerated clauses . . . the attorney's failure to comply with any *one* of these statutory requirements invokes the sanctions provisions of the statute." (emphasis added)). Yet the trial court struck the language of the draft order characterizing DeVita's conduct as "intentional" in favor of a less culpable "reckless indifference," which is not, in my view, the appropriate standard for the imposition of sanctions under Code § 8.01-271.1(B)(iii). For that reason, I concur with the majority that DeVita's conduct was sanctionable but do not support the majority's finding that Code § 8.01-271.1 does not require intent.