COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges AtLee, Athey and White


ERIC THOMPSON OLSEN

                                                    MEMORANDUM OPINION[*]
v.       Record No. 2150-23-3                       PER CURIAM
                                                    MAY 27, 2025
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF NELSON COUNTY
                              Michael R. Doucette, Judge

            (Eric Thompson Olsen, on briefs), *pro se*.

            No brief for appellee.[1]


       Eric Thompson Olsen ("Olsen"), *pro se*, petitioned for a name change in the Circuit

Court of Nelson County ("circuit court").  His petition for a name change was subsequently

denied following a hearing.  On appeal, Olsen contends that the circuit court abused its discretion

when weighing the evidence and for failing to fully consider the impact a denial would have on

his religious practice.  Olsen also asserts that the circuit court erred by failing to make written

findings in its order as required pursuant to Code § 8.01-217.  We disagree and affirm the circuit

court's judgment.[2]

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Resolution of this case does not require us to consider the Commonwealth's brief, which failed to comply with Rule 5A:21(c).  In addition, the Commonwealth was afforded the opportunity to correct the deficiency in the brief but failed to do so.

[2] After examining the briefs and record in this case, the panel unanimously holds that oral argument is unnecessary because "the appeal is wholly without merit."  Code § 17.1-403(ii)(a); Rule 5A:27(a).

# I. BACKGROUND[3]

In 2011, Olsen pleaded guilty in the Circuit Court of Albemarle County to three counts of aggravated sexual battery of a seven-year-old child victim and was sentenced to a total of 60 years with 50 years and 6 months suspended. Olsen was also ordered to serve two years of supervised probation after his release from confinement and was further required to be of good behavior for 60 years from the date of his sentencing. The nature of the convictions further required Olsen to register with the Sex Offender and Crimes Against Minors Registry ("the Registry"). *See* Code §§ 9.1-901(A), -902(A). Finally, the sentencing order forbid Olsen from having any contact with the child victim or any unsupervised contact with any other child under the age of 18. Olsen was also prohibited from residing in any household where a child under the age of 18 also resided. In 2019, Olsen was released from active incarceration and placed on two years of supervised probation, which ended in 2021.

On September 26, 2023, Olsen applied to the Circuit Court of Nelson County ("circuit court") to change his last name to "Laemmura." The circuit court accepted his application, and at a hearing on his request, Olsen testified that he had married earlier that year and, together with his wife, came up with the new name during "some spiritual introspection" about "what resonates" with them and has "personal authenticity." He explained that he was born "Eric Thompson," but after his parents divorced and his mother remarried, he was adopted by his stepfather and took his stepfather's last name—"Olsen"—while retaining "Thompson" as his middle name. He described how he "never felt resonant with" his stepfather's last name and how once he got older, he became

---

[3] Under settled appellate principles, "we recite the facts 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Konadu v. Commonwealth*, 79 Va. App. 606, 609 (2024) (quoting *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)). "The party who successfully persuades the factfinder 'is entitled [on appeal] to have the evidence viewed in the light most favorable to [it], with all conflicts and inferences resolved in [its] favor.'" *McCants v. CD & PB Enters., LLC*, 303 Va. 19, 22 (2024) (first alteration in original) (quoting *Chacey v. Garvey*, 291 Va. 1, 8 (2015)).

known as "Eric Thompson" in his personal and business life but continued to use his full name for "legal" and "banking" reasons. Although Olsen stated that he sought the name change "for spiritual reasons," when asked if not changing his name would hinder his religious practice, Olsen answered, "Whono."[4]

Olsen described various endeavors he had been involved in during and since his incarceration. He emphasized ways that he had contributed to the community, to show that he was an "industrious" person who creates and makes a positive difference. According to Olsen, getting married involved "a sacred commitment" and "sacred vow." He further explained that "changing our name is not specifically in a religious way. It is, it is a way that has continuity, for us in our spiritual beliefs and in our, in our spiritual presentation of ourselves in the world."

Several members of Olsen's local community submitted "letters of support" on his behalf. Ryphon Gray testified that he came to know Olsen through business, that Olsen had helped him, and that he knew Olsen by the last name Thompson.

The Commonwealth opposed Olsen's request to change his name, contending that requiring him "to bear th[e] name" under which he was convicted served a legitimate law enforcement purpose. The Commonwealth further asserted that the victim should have the assurance that

---

[4] The Commonwealth and Olsen engaged in the following colloquy during Olsen's cross-examination:

> Q: Sir, I understand why you said you wanted to change your name. What I didn't hear and I want to make sure I'm correct. You're not changing your name for religious reasons, correct? You haven't converted to Islam and you're not changing your name—
> A: No, no, no, no. I am changing my name for spiritual reasons. Yes.
> Q: But what I heard is you're not hindered from the free exercise of your religion not changing your name, correct?
> A: Whono.

After this discussion, the Commonwealth moved on to a different line of questioning.

whenever she searches the Registry, she knows what name to look up and that the name has not changed. The Commonwealth contended that protection for his former child victim and society favored denying Olsen's request.

Olsen maintained that changing his name should not cause concern because he would update the Registry with his new last name, he would have the same registration number, and he would continue to update his address every three months. He also noted that his civil rights were restored in March of 2021. In closing, Olsen emphasized that he was "spiritually" "Eric Thompson L[ae]mmura" and that he was seeking the name change because of his marriage.

Following argument, the circuit court found that the key issue was that Olsen remains on the Registry, reasoning that the victim and "society have a right to know that Eric Olsen is in their neighborhood." The circuit court then denied Olsen's petition by final order entered on November 16, 2023. Olsen appealed.

## II. ANALYSIS

### A. *Standard of Review*

"We review a circuit court's denial of an application for a name change under an abuse of discretion standard." *Jordan v. Commonwealth*, 295 Va. 70, 74 (2018). Under this deferential standard of review, "the trial court has a range of choice, its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Carrithers v. Harrah*, 63 Va. App. 641, 653 (2014) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212-13 (2013)). "We apply this 'bell-shaped curve of reasonability' based on our 'venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie.'" *Id.* at 654 (quoting *Hamad v. Hamad*, 61 Va. App. 593, 607 (2013)).

"The abuse of discretion standard draws a line—or rather, demarcates a region—between the unsupportable and the merely mistaken, between the legal error . . . that a reviewing court

may always correct, and the simple disagreement that, on this standard, it may not." *Jefferson v. Commonwealth*, 298 Va. 1, 10-11 (2019) (alteration in original) (quoting *Reyes v. Commonwealth*, 297 Va. 133, 139 (2019)). It "requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the [reviewing] court does not reverse merely because it would have come to a different result in the first instance." *Commonwealth v. Thomas*, 73 Va. App. 121, 127 (2021) (alteration in original) (quoting *Lawlor*, 285 Va. at 212). "Only when reasonable jurists could not differ can [an appellate court] say an abuse of discretion has occurred." *Commonwealth v. Barney*, 302 Va. 84, 94 (2023) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).

B. *The circuit court did not abuse its discretion in denying Olsen's petition.*

Olsen contends that the circuit court abused its discretion in denying him a name change: 1) by improperly focusing only on the effect that changing his name might have on the victim of his crimes; 2) by ignoring evidence that his application failed to implicate any of the statutory factors; 3) by improperly comparing his case with *Jordan*; and 4) by failing to recognize the positive steps he had taken since his convictions.[5] We disagree.

A court that accepts an application for a name change by a person required to register with the Registry

---

[5] On brief, Olsen also argues that the circuit court's denial of his petition infringes on his constitutional right to freely exercise his religious beliefs. However, that was not his testimony at the hearing. During the hearing, he denied that being unable to change his name would hinder his religious practice, answering "Whono" when asked if he was asserting that his free-exercise rights would be affected by a denial of his petition and stating that "changing our name is not specifically in a religious way." Thus, Olsen did not present to the circuit court his argument that not changing his name interfered with the free exercise of his religious beliefs. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. Olsen "does not invoke the good cause or ends of justice exceptions to Rule 5A:18, and the Court will not address them sua sponte." *Hogle v. Commonwealth*, 75 Va. App. 743, 756 (2022). Therefore, this argument is waived on appeal, and we do not address it. *See id.* at 755.

> shall conduct a hearing on the application and *may* order a change of name if, after receiving and considering evidence concerning the circumstances regarding the requested change of name, the court determines that the change of name (i) would not frustrate a legitimate law-enforcement purpose, (ii) is not sought for a fraudulent purpose, and (iii) would not otherwise infringe upon the rights of others.

Code § 8.01-217(D) (emphasis added). The statute does not compel the court to grant the name change but merely provides that the court "may" do so.[6] *Id.* If the court grants the name change, its order must "contain written findings stating" the basis for granting the change. *Id.*; Code § 8.01-217(E) ("The provisions of subsection D are jurisdictional and any order granting a change of name pursuant to subsection D that fails to comply with any provision of subsection D is void ab initio.").

In *Jordan*, our Supreme Court affirmed a circuit court's denial of an inmate's petition for a name change. 295 Va. at 72. Jordan was convicted of several violent felonies, which included beating elderly individuals. *Id.* While incarcerated, Jordan underwent a religious conversion and petitioned to change his name. *Id.* The circuit court denied the petition, finding that Jordan's application "frustrate[d] a legitimate law-enforcement purpose" and reasoning that "[a] function of his punishment [was] that he bear the convictions in the name they were ordered by the court, and that his victims and society have that assurance." *Id.* at 73-74.

On appeal, the Supreme Court reasoned that "[f]or inmates, probationers, and persons required to register as sex offenders, a court must find as a threshold matter that the name change would not frustrate a legitimate law-enforcement purpose, is not sought for a fraudulent purpose, and would not otherwise infringe on the rights of others." *Id.* at 74. Indeed, "[i]f any one of

---

[6] This discretionary language also applies to probationers and inmates. *See Jordan*, 295 Va. at 74-75; Code § 8.01-217(D). By contrast, "for all other applicants," "the court 'shall' order a name change unless certain circumstances are present." *Id.* at 74 (quoting Code § 8.01-217(C)).

those circumstances is present, the court must deny the petition." *Id.* But "[e]ven when those circumstances are absent, the court is not required to grant the petition—it retains broad discretion to grant or to deny the petition." *Id.*

The Supreme Court further noted that although the circuit court cited the fact that Jordan's name change would "frustrate a legitimate law enforcement purpose" in denying his petition, its "reasoning [wa]s broader than the confines of that provision." *Id.* at 76. Thus, the Supreme Court held that it was within the circuit court's discretion to "conclude that a person who would commit crimes of that gravity and brutality must retain his given name, for the peace of mind of the victims and the victims' families and to avoid any possible future confusion about his identity." *Id.* Two other facts also contributed to the Court's conclusion: 1) Jordan stated that his religious exercise "would not be hindered" if he could not change his name and 2) Jordan would be eligible for possible release into the community when he reached a certain age. *Id.* Considering these facts, the Supreme Court held that the circuit court did not abuse its discretion by denying Jordan's petition. *Id.*

Here, even when assuming without deciding that the circuit court made no specific finding under Code § 8.01-217(D), the circuit court did not abuse its discretion. The court's rationale for denying the petition, as it explained from the bench, was that Olsen was on the Registry, and the victim "and society have a right to know that Eric Olsen is in their neighborhood." Thus, as in *Jordan*, the circuit court considered the gravity of Olsen's prior convictions, the "peace of mind of the victims and the victims' families," and the possibility of "future confusion about his identity." *Jordan*, 295 Va. at 76. Moreover, at the hearing, Olsen stated that "changing our name is not specifically in a religious way," which implied that his religious exercise "would not be hindered" by the denial of a name change. *See id.* at 72, 76. In addition, Olsen had recently been released into the community, so the risk of interference with the

peace of mind of his victim and the potential for possible confusion is greater here than it was in *Jordan*. *See id.* at 76.

Olsen also contends that any effects on the victim would be minimal because the Registry would be updated with his new name and would include the same identifying number as before. He emphasizes that the risk of confusion is minimal because he would retain the name Thompson, which he has been known by for years in business and personal associations. He also points to his positive contributions to the community allegedly made since his convictions. But since the circuit court reached its decision after hearing both Olsen's assertions and the Commonwealth's concerns, we cannot find that the circuit court's decision to discount Olsen's assertions amounted to an abuse of its "broad" discretion. *Jordan*, 295 Va. at 74; *Carrithers*, 63 Va. App. at 653 ("An abuse of discretion occurs 'only "when reasonable jurists could not differ"' as to the proper decision." (quoting *Brandau v. Brandau*, 52 Va. App. 632, 641 (2008))).

Finally, Olsen contends that the circuit court should have included in its final order "reasoning that exhibited a considered balance of the governing statute," including its findings on the three factors identified in Code § 8.01-217(D). We disagree.

Code § 8.01-217(D) provides that when a court *grants* a petition for a name change, its order must "contain written findings stating the court's basis for granting" the change. The statute does not require the circuit court to issue written findings when it *denies* a petition. *Leonard v. Commonwealth*, 296 Va. 479, 486 (2018) ("The statute does not require written findings if the court denies the name change."). "And absent a statutory mandate . . . a trial court is not required to give findings of fact and conclusions of law." *Cannaday v. Commonwealth*, 75 Va. App. 707, 719 (2022) (alteration in original) (quoting *Fitzgerald v. Commonwealth*, 223 Va. 615, 627 (1982)). Thus, the circuit court did not abuse its discretion by not including findings on the three statutory factors in its final order denying Olsen's petition.

For all these reasons, the circuit court did not abuse its discretion in denying Olsen's requested name change.

### III.  CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*